(No. 80172.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KATHY GAULTNEY, Appellant.

*Opinion filed December 19, 1996.*

FREEMAN, J., dissenting.

Daniel M. Kirwan, Deputy Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellant.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Robert K. Villa, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

This case arises from the dismissal of a petition brought under the Post-Conviction Hearing Act (725 ILCS 5/122—1 et seq. (West 1992)). In 1990, defendant, Kathy Gaultney, was convicted of the first degree murder of her husband and was sentenced to 45 years in prison. The conviction and sentence were affirmed by

the appellate court on direct appeal in 1992. No. 5—90—0583 (unpublished order under Supreme Court Rule 23). Defendant filed a petition for leave to appeal to this court, which was denied. *People v. Gaultney*, 148 Ill. 2d 647 (1993).

On August 6, 1993, defendant filed a *pro se* postconviction petition in the circuit court of Madison County. On August 11, 1993, the State filed a motion to dismiss the petition. The circuit court dismissed the petition as frivolous and patently without merit on November 1, 1993. The appellate court affirmed the dismissal of the petition. No. 5—93—0816 (unpublished order under Supreme Court Rule 23). We granted defendant's petition for leave to appeal. 155 Ill. 2d R. 315. We affirm.

## BACKGROUND

We will summarize the evidence presented at trial only as needed to address the issues raised in this appeal. On September 22, 1989, defendant's husband, Keith Gaultney, was killed after being shot twice in the head at the residence he shared with defendant. Defendant called the police around 10 p.m. to report a burglary at her home. When the police arrived, they found the victim lying face down in his bed, shot twice and apparently killed during the burglary. A drawer had been removed from a dresser in the room and was resting partially on the victim's legs. Some of the contents of the drawer had spilled onto the bed.

The police interviewed defendant. She told them that she left the residence about 10 minutes before 7 p.m. She said that, when she left, she saw the victim in the bedroom, asleep on the bed with the television on. She returned around 10 p.m. to find the victim dead. Defendant also told the police that the victim had probably eaten between 4 p.m. and 6 p.m. A pathologist estimated, in an autopsy report, that the victim had

died roughly within an hour after eating a meal, based on the contents of the victim's stomach.

The State called Rachel Lauer, defendant's daughter, to testify at trial. Rachel was also the victim's stepdaughter. At the time of the murder, she was in seventh grade and lived with her mother and stepfather. Rachel testified that she was at the house around 7 p.m. with her friend, Misty Robards. At that time, her mother was getting ready to leave and said that she wanted to lock the doors. Rachel's mother told her to leave and to be back at 12 a.m.

Rachel and Misty remained in the neighborhood to wait for Rachel's mother to leave. According to Rachel, they wanted to return to the house after defendant left to get some money from the victim. They were going to take the money out of the victim's wallet while he slept. Rachel and Misty watched the house for 15 to 20 minutes until defendant left. At some point, they encountered Jodie White, another friend. After Rachel's mother left, Rachel and Misty returned and entered the house. Jodie remained outside. While in the house, Rachel went by the bedroom door. She did not enter the bedroom. Rachel saw a dresser drawer and its contents scattered around the bedroom. She saw some of her mother's jewelry lying on the bed. The bedroom light was off but the television was on and blaring loudly. Rachel saw the victim's feet but the rest of the victim was "covered up." Rachel thought that her mother and the victim had been involved in a fight and that the victim was sleeping. In response to a question from trial counsel, Rachel testified that she did not hear any noise emanating from the bedroom other than the television. Rachel's testimony suggested that the victim was already dead when her mother left the house.

Misty Robards also testified. Her testimony was similar to Rachel's. Misty, however, testified that she and

Rachel returned to the house twice after Rachel's mother left. First, they returned with Jodie White. Misty testified that Rachel went into the house by herself but came back outside after a short time. Rachel could not find the victim's wallet. Rachel and Misty returned to the house a second time. When they returned, both went into the house this time. Rachel and Misty entered the house through the back door, which was unlocked. Misty testified that she and Rachel walked past the bedroom. Her testimony regarding the condition of the bedroom and the victim was essentially the same as Rachel's.

In the post-conviction petition, defendant claimed that she was denied effective assistance of counsel at trial. Specifically, defendant alleged that her trial counsel failed to ask Rachel whether she heard the victim snoring in the bedroom on the night of the murder. According to defendant, Rachel told trial counsel before trial that she heard the victim snoring when she entered the house the first time. Trial counsel did not ask her about this snoring at trial. Defendant alleged that this testimony would have shown that defendant had not killed the victim before she left the house and that another individual must have killed the victim.

In support of the petition, defendant submitted five affidavits from herself and from relatives. Rachel allegedly told these individuals that she heard the victim snoring when she first entered the house. Defendant also submitted an affidavit from trial counsel, who stated that Rachel told him before trial that she had heard the victim snoring. Defendant submitted an affidavit from another attorney, who talked to someone over the phone claiming to be Rachel Lauer. Defendant, however, did not submit an affidavit from Rachel, the individual who was critical to defendant's claim.

The State filed a motion to dismiss the post-

conviction petition on August 11, 1993. The State sought dismissal on four general grounds: (1) the petition was untimely; (2) the petition failed to present a substantial showing of a violation of defendant's constitutional rights; (3) defendant was merely trying to relitigate the jury trial proceedings; and (4) the claims in the petition were barred by *res judicata* or were waived. The motion was short and contained "boilerplate" language. The State did not discuss any of the facts of the case in the motion. The State cited no case law in support of the motion. The State asked that the petition be dismissed without an evidentiary hearing.

The circuit court dismissed the petition as frivolous and patently without merit. The dismissal order stated:

"This cause comes before the court on Defendant's Petition for Post Conviction Relief pursuant to 725 ILCS 5/122—2.1. The Court having reviewed the Petition and affidavits attached thereto, the trial transcript, and the opinion of the 5th District Appellate Court finds as follows:

Defendant was convicted of the offense of Murder in the death of her husband after a jury trial. She was sentenced to the Illinois Department of Corrections for a term of 45 years. On the 26th day of August, 1992, Defendant's direct appeal was denied by the 5th District Appellate Court. On appeal, Defendant raised six issues, one of those being whether the circumstantial evidence was sufficient to support a verdict of guilty beyond a reasonable doubt.

Defendant's Petition for Post-Conviction Relief is raising the issue of the sufficiency of the circumstantial evidence presented at trial. Also raised is a claim of ineffective assistance of counsel, because counsel did not ask a question of Rachel Lauer concerning what she heard when she went into the house on the night of the murder. There are several affidavits attached to the Petition, however there are no affidavits of Rachel Lauer or Misty Robards, who were the two witnesses in the house.

The question of sufficiency of the circumstantial evi-

dence is res judicata, having already been determined by the Appellate Court. The issue of incompetency of counsel is waived, being an issue that should have or could have been raised on direct appeal. This is an issue that Defendant was aware of at time of sentencing. Thus Defendant was aware of such issue at time of her appeal. Even if such issue is not waived, it is apparent from the trial transcript, which includes the testimony of Rachel Lauer and Misty Robards, and the lack of affidavits from these individuals, that Defendant's Petition fails to present a substantial showing of violation of Defendant's constitutional rights.

The Court determines that the Petition is frivolous and patently without merit, and is therefore dismissed without an evidentiary hearing."

The appellate court affirmed the dismissal of the petition. The court noted that the State filed a motion to dismiss before the trial judge ruled on whether the post-conviction petition was frivolous and patently without merit. The court stated that a trial judge should not rely on a motion to dismiss when determining whether a petition is frivolous. The appellate court then examined the record and found that the trial judge had not relied on the motion to dismiss in making his determination. Because the trial judge did not rely on the State's motion, the court upheld the dismissal. Justice Chapman dissented. He believed that the record showed that the trial judge was influenced by the State's motion and that the dismissal was improper.

## ANALYSIS

Defendant argues that the State is not allowed any input when the circuit court determines whether a post-conviction petition is frivolous or patently without merit. Here, the State filed a motion to dismiss before the circuit court determined that the petition was frivolous. Defendant argues that the State's motion to dismiss influenced the circuit court and tainted the circuit court's determination. According to defendant,

this cause should be remanded for the appointment of counsel and further consideration of defendant's petition.

Section 122—2.1 of the Post-Conviction Hearing Act (the Act) provides:

> "(a) Within 90 days after the filing and docketing of each petition the court shall examine such petition and enter an order thereon pursuant to this Section.
>
> \*\*\*
>
> (2) If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry.
>
> (b) *If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122—4 through 122—6.*
>
> (c) In considering a petition pursuant to this Section, the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." (Emphasis added.) 725 ILCS 5/122—2.1 (West 1992).

If the petition is not dismissed pursuant to section 122—2.1, section 122—4 provides for the appointment of counsel to indigent defendants. 725 ILCS 5/122—4 (West 1992). Section 122—5 of the Act provides:

> "Within 30 days *after the making of an order pursuant to subsection (b) of Section 122—2.1*, or within such further time as the court may set, *the State shall answer or move to dismiss*. In the event that a motion to dismiss is filed and denied, the State must file an answer within 20 days after such denial. No other or further pleadings shall be filed except as the court may order on its own motion or on that of either party." (Emphasis added.) 725 ILCS 5/122—5 (West 1992).

Section 122—6 allows the circuit court to hold an evidentiary hearing. 725 ILCS 5/122—6 (West 1992).

Pursuant to the Act, a post-conviction proceeding that does not involve the death penalty has three distinct stages. In the first stage, the defendant files a petition and the circuit court determines whether it is frivolous or patently without merit. At this stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State. Instead, the circuit court considers the petition independently, without any input from either side. To survive dismissal at this stage, a petition need only present the gist of a constitutional claim. *People v. Porter*, 122 Ill. 2d 64, 74 (1988). This is a low threshold and a defendant need only present a limited amount of detail in the petition. At this stage, a defendant need not make legal arguments or cite to legal authority. *Porter*, 122 Ill. 2d at 74. The Act provides that the petition must be supported by "affidavits, records, or other evidence supporting its allegations" or the petition "shall state why the same are not attached." 725 ILCS 5/122—2 (West 1992). If the circuit court does not dismiss the petition pursuant to section 122—2.1, it is then docketed for further consideration.

The proceeding then advances to the second stage. At the second stage, the circuit court appoints counsel to represent an indigent defendant. 725 ILCS 5/122—4 (West 1992). Counsel may file an amended post-conviction petition. Also, at this second stage, the Act expressly provides that the State may file a motion to dismiss or answer to the petition. 725 ILCS 5/122—5 (West 1992). Section 122—5 specifically contemplates that the State will file a motion to dismiss or answer *after* the circuit court has evaluated the petition to determine if it is frivolous. If the circuit court does not dismiss or deny the petition, the proceeding advances to the third stage. At this final stage, the circuit court conducts an evidentiary hearing. 725 ILCS 5/122—6

(West 1992). If the circuit court dismisses the petition or denies post-conviction relief at any stage, the defendant may appeal.

Several appellate decisions have considered the situation where the State files a motion before the circuit court has decided whether the petition is frivolous. See, *e.g.*, *People v. Merritte*, 225 Ill. App. 3d 986 (1992); *People v. Mitchell*, 218 Ill. App. 3d 401 (1991). These courts have consistently found that the filing of a motion at this stage is premature and improper under the Act. See, *e.g.*, *People v. Oury*, 259 Ill. App. 3d 663, 668 (1994). The sections of the Act, when considered collectively, do not authorize the filing of a motion to dismiss at the first stage.

The mere early filing of a motion or responsive pleading by the State, however, does not *per se* contaminate the circuit court's determination pursuant to section 122—2.1. See, *e.g.*, *Mitchell*, 218 Ill. App. 3d at 402-03. The premature filing of a motion to dismiss does not prevent the circuit court from independently evaluating whether a post-conviction petition is frivolous or patently without merit, as required by the Act. Rather, reversal is required where the record shows that the circuit court sought or relied on input from the State when determining whether the petition is frivolous. Compare *People v. Barker*, 258 Ill. App. 3d 323 (1994) (reversal required where the trial judge requested argument from both parties); *Merritte*, 225 Ill. App. 3d 986 (reversal required where the State orally argued its motion to dismiss at length to the trial judge and where the judge stated that dismissal was based, in part, on the reasons given by the State at oral argument); *People v. Clark*, 239 Ill. App. 3d 546 (1992) (reversal required where the State presented oral argument, the State used case law to support its oral argument, and the trial judge said that he had relied on the State's arguments);

*People v. Rutkowski*, 225 Ill. App. 3d 1065 (1992) (reversal required where the trial judge heard argument from the State on its oral motion to strike); *People v. Novak*, 200 Ill. App. 3d 189 (1990) (reversal required where the trial judge conducted a hearing on the motion to dismiss and expressly indicated that he was granting the State's motion); *People v. Magdaleno*, 188 Ill. App. 3d 384 (1989) (reversal required where the trial judge addressed the merits of the State's motion to strike); with *People v. Woods*, 239 Ill. App. 3d 559 (1992) (no reversal where the motion was short and cited only one case, the trial judge did not hear any argument on the motion, and the order showed an independent analysis); *Mitchell*, 218 Ill. App. 3d 401 (no reversal where the motion was terse, the trial judge did not hear any argument from the State, and the dismissal order showed a detailed analysis).

We agree with the approach of these appellate decisions. Section 122—2.1 of the Act authorizes the trial judge to make an initial independent evaluation of a post-conviction petition. 725 ILCS 5/122—2.1 (West 1992). We ordinarily presume that the trial judge knows and follows the law unless the record indicates otherwise. See *People v. Terrell*, 132 Ill. 2d 178, 219 (1989). Where the record gives no indication that the trial judge sought input from the State or relied on the motion to dismiss, we presume that the judge acted properly.

In this case, defendant acknowledges that reversal is required only if the record shows that the circuit court relied on or was influenced by the motion to dismiss. Defendant argues, however, that the order shows that the circuit court did rely on the motion to dismiss. Defendant emphasizes four purported similarities between the motion to dismiss and the dismissal order to show this reliance.

First, defendant argues that the circuit court erro-

neously relied on the principle of *res judicata*, which was raised in the State's motion, to bar any attack on the sufficiency of the evidence presented at trial. Defendant contends that she did not challenge the sufficiency of the evidence in her post-conviction petition. Second, defendant argues that the circuit court erroneously relied on waiver in connection with her ineffective-assistance claim. According to defendant, waiver is inappropriate here because the same counsel represented defendant both at trial and on appeal. Defendant contends that the trial judge would not have mentioned waiver if that argument had not been contained in the motion to dismiss. Third, defendant argues that the circuit court dismissed the petition "without an evidentiary hearing," which is what the State sought in its motion. Defendant argues that the circuit court should not consider whether she is entitled to a hearing at this stage of the proceeding. Fourth, defendant argues that the circuit court found that the petition failed to "present a substantial showing of violation of Defendant's constitutional rights," which is similar to language used by the State in its motion. Again, defendant argues that this language is used when considering whether a defendant is entitled to an evidentiary hearing and that this language would not have been used absent the motion.

The purported similarities identified by defendant are too tenuous to show reliance on the motion to dismiss. First, with respect to *res judicata*, an examination of the post-conviction petition shows that the allegations in the petition do generally attack the sufficiency of the circumstantial evidence presented at trial. Second, with respect to waiver, defendant may be correct that the circuit court overlooked counsel's representation at trial and on appeal. Waiver aside, however, the circuit court specifically found that the ineffective-

assistance claim was frivolous because defendant failed to submit affidavits from either Rachel Lauer or Misty Robards, which was not suggested by the State. With respect to defendant's third and fourth arguments, some of the language in the order is similar to the language in the motion, but, as the appellate court noted, the similar language involves general terminology that is common in post-conviction proceedings. The circuit court denied the petition "without an evidentiary hearing" because defendant requested a hearing in her petition.

Most significantly, the trial judge specifically identified the materials on which he relied in making his determination. He stated that he had reviewed the post-conviction petition, the affidavits, the trial transcript, and the decision of the appellate court on direct appeal. No mention was made of the State's motion to dismiss. No hearing was held. The analysis in the dismissal order recited the facts of the case and was more detailed than the reasons presented in the motion to dismiss. In the order, the trial judge specifically found that the petition was "frivolous and patently without merit," which is the proper statutory standard for dismissal. Accordingly, we reject defendant's argument.

Defendant also argues that the circuit court erred in substantively finding the petition frivolous or patently without merit. Defendant argues that the circuit court erred in dismissing the petition based on defendant's failure to include an affidavit from either Rachel Lauer or Misty Robards. Defendant concedes that she failed to raise this argument in the appellate court and in the petition for leave to appeal to this court. We find the issue waived. See *People v. Schott*, 145 Ill. 2d 188, 201 (1991); *Federal Deposit Insurance Corp. v. O'Malley*, 163 Ill. 2d 130, 154 (1994).

Finally, defendant argues that the prosecutor made certain improper comments during closing argument.

Defendant argues that trial counsel was ineffective in failing to object to them and that the comments violated due process. Essentially, the prosecutor told the jury that it had to accept certain statements of witnesses as true because they were unrebutted. This argument was not raised in the post-conviction petition. Section 122—3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 1992). In addition, this issue also was not raised on appeal to the appellate court or in the petition for leave to appeal to this court. Again, we find the issue waived.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

The record here clearly indicates that the trial judge was influenced by and improperly relied on the State's premature motion in deciding to dismiss defendant's *pro se* post-conviction petition. For this reason, I cannot join the majority's affirmance. I agree with dissenting Justice Chapman of the appellate court. See No. 5—93—0816 (unpublished order under Supreme Court Rule 23). The trial judge here was influenced by and relied on the State's motion and, thus, dismissal of defendant's *pro se* petition was improper.

On August 6, 1993, defendant filed her *pro se* post-conviction petition, claiming ineffective assistance of trial counsel. The petition was supported by seven affidavits from herself, her relatives, and two attorneys, attesting to the fact that a witness had made exculpatory statements. To be sufficient at this initial stage of the post-conviction process, defendant's *pro se* petition only needed to clear a low threshold by presenting the gist of a constitutional claim. *People v. Porter*, 122 Ill. 2d

64, 74 (1988). In ruling on the petition at this stage, the trial court only needed to determine that the petition was not frivolous or patently without merit. See 725 ILCS 5/122—2.1 (West 1992). No evidentiary hearing was authorized at this stage. See 725 ILCS 5/122—6 (West 1992).

Five days later, the State prematurely filed a motion to dismiss, utilizing boilerplate language and terminology suited for requesting dismissal at a later stage in the post-conviction process. Because the defendant's right to counsel had not yet attached at this stage of the process, the State was not permitted to be actively represented. See *People v. Rutkowski*, 225 Ill. App. 3d 1065 (1992); *People v. Merritte*, 225 Ill. App. 3d 986 (1992). The State's motion claimed that the petition failed to meet a higher standard than that required at that particular stage of the process. Thus, the motion stated "defendant's petition fails to present a *substantial showing* of a violation of the petitioner's constitutional rights." The motion also requested that the petition be dismissed "without an evidentiary hearing." Presumably, the trial judge, knowing the law, would not consider the motion.

On November 1, 1993, the trial court issued an order dismissing the petition, concluding that it was frivolous and patently without merit. Interestingly, the order, like the State's motion, referred to a standard of sufficiency appropriate to a later stage of post-conviction process. Interestingly, also, the order referred to this standard by means of a statement nearly identical to the State's statement of the standard in its motion. Thus, the order stated "defendant's petition fails to present a substantial showing of violation of defendant's constitutional rights." The order's statement of the standard was also more similar to the motion's statement of the standard than to the statutory standard, itself. See

725 ILCS 5/122—1 (West 1992) (referring to "a substantial denial of his rights under the Constitution"). The majority explains that this similarity involves merely "general terminology that is common in post-conviction proceedings." 174 Ill. 2d at 422. I strenuously disagree. The similarity involves practically a word-for-word statement of an untimely procedural standard in terms more closely parallel to those in the State's motion than to those in the statute.

In addition to this similarity, the order also inappropriately stated, just like the State's motion inappropriately requested, that dismissal of the petition was "without an evidentiary hearing." The majority explains the curious appearance of this inappropriate language within the order as no more than the response to the petitioner's request for a hearing. 174 Ill. 2d at 422. The problem, however, is that the court need not have responded to the request. Even if the court had not dismissed the petition, petitioner's request for a hearing could not have been granted at this stage in the proceedings (see 725 ILCS 5/122—5, 122—6 (West 1992)), so the court's statement was surplusage.

To accept the majority's explanations would mean that it was simply coincidental that the State's motion was similar to the trial judge's order. I find that hard to believe. These two language and untimely procedural reference similarities clearly suggest to me that the trial judge was influenced by the State's motion. That being the case, I am not persuaded that the other two similarities noted by petitioner are tenuous as the majority believes. The remaining similarities, rather, strengthen the petitioner's case.

The State's motion stated that "the Post-Conviction Hearing Act is not designed to relitigate the defendant's guilt or innocence established in the jury trial proceedings" and that "the defendant's petition is barred by the

doctrine of *res judicata* in that all claims which were raised or which could have been raised on appeal are waived and cannot be raised in a post-conviction proceeding." The order stated that "[t]he question of sufficiency of the circumstantial evidence is *res judicata*, having already been determined by the Appellate Court. The issue of incompetency of counsel is waived, being an issue that should have or could have been raised on direct appeal." The finding that the issue of incompetency of counsel was waived was legally incorrect, however, because a waiver exception applied in this case.

The majority explains that the order drew its statement regarding evidentiary sufficiency being *res judicata*, not from the State's motion, but from the petition's allegations in general. 174 Ill. 2d at 421. The petition, however, specifically raised only the issue of the ineffectiveness of trial counsel. The majority does not explain at all the similarity between the order's incorrect legal finding of waiver and the State's motion urging waiver. The majority simply sidesteps the matter, reasoning that the trial court's frivolous finding stated a basis other than that suggested by the State's motion. 174 Ill. 2d at 422. To say that the order had an indication of some independent basis, however, does not explain the similarity.

I believe the State prematurely filed a somewhat generic motion to dismiss, which was likely designed to attack a post-conviction petition which had survived this first stage of post-conviction proceedings. The motion's influence is shown by the trial court's use of the same language, referring to a determination more properly made at a later stage in post-conviction proceedings; and of nearly verbatim language, referring to a statutory standard more properly applied at a later stage. The similar language, the similar untimely procedural

references, and the similarly inappropriate reliance on waiver convince me that the trial judge was influenced by and relied on the State's motion. Accordingly, dismissal of defendant's *pro se* petition was improper.