UNITED STATES of America, ex rel.
Donald Lee McDONALD,
Petitioner,

v.

James H. PAGE, Respondent.

No. 99 C 8357.

United States District Court,
N.D. Illinois,
Eastern Division.

July 19, 2000.

Donald Lee McDonald, Joliet, IL, pro se.

Jay Paul Hoffman, Chief of Criminal Appeals, Illinois Attorney General's Office, Chicago, IL, for Respondent.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Donald McDonald's petition for writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the court denies the petition.

## I. BACKGROUND

The court summarizes the relevant facts regarding McDonald's conviction from the Illinois Appellate Court's order affirming his conviction, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1).[1]

Following a jury trial in the Circuit Court of Cook County, McDonald was convicted of criminal sexual assault, and sentenced to natural life in prison under the Illinois Habitual Criminal Act. Prior to the conviction which McDonald is collaterally attacking in this petition, McDonald was convicted for the criminal sexual assault of "F.M.," his girlfriend's seven year old daughter. The crime that gives rise to the instant petition took place in June or July 1993, when McDonald again sexually assaulted F.M. by engaged in sexual intercourse with her when she was thirteen years old.

The investigation into McDonald's second sexual assault of F.M. began on March 5, 1994, when Chicago Police Officer Peterson and his partner followed up on an anonymous letter that said a young girl was being sexually molested by her mother's boyfriend, whose name was Don. The police went to the home of the girl's mother, Barbara Mays, and met with Mays and McDonald. Mays told the police that F.M. was at Mays' parent's house, and gave police that address. The police went to look for F.M., but could not find the address Mays gave them. The police then phoned Mays and asked her to accompany them. When the police returned to Mays' home, both she and McDonald went with the police to find F.M. The police did not handcuff Mays or McDonald, nor did the police require Mays and McDonald to join them. Nonetheless, Mays and McDonald felt they were compelled to go with the police.

The police found F.M. at her grandparent's home, and spoke with her about the alleged molestation. During this time, Mays and McDonald remained in the police car. F.M. told the police that McDonald had sexual intercourse with her several months earlier. After learning this information, the police placed McDonald under arrest and took him to the police station.

Under police questioning, McDonald recalled an incident with F.M., where he had been drinking and went with F.M. to a building at 5600 South Union. Once in the building, McDonald said he told F.M. to

1. In a bound volume, Respondent provided copies of the Illinois courts' decisions, and the pleadings filed in the Illinois courts. For simplicity, the court cites to these papers by the bound volume's record number (8), and Respondent's exhibit designation. The Illinois appellate court's opinion on direct appeal is (R. 8, Ex. C).

remove her clothes and had sexual relations with her. The police then called an assistant state's attorney, who interviewed McDonald, and recorded McDonald's statements in a handwritten report. McDonald read and signed the report, which indicated that McDonald engaged in sexual intercourse with F.M. in June 1993.

Prior to trial, McDonald made two motions to suppress his statements. He first argued that his arrest should be quashed because it was not based on probable cause. The court held a hearing on this motion, and took testimony from Mays, McDonald, and Officer Peterson. The court concluded that McDonald was not under arrest at the time police first went to Mays' home, and that Mays and McDonald voluntarily went with the police to find F.M. After the police spoke with F.M., they had probable cause to arrest McDonald, and did so. Accordingly, the court denied McDonald's motion to quash the arrest and suppress his statements.

Sometime after the motion to suppress, but before trial, McDonald made another motion to suppress his statements. This time, McDonald argued that his statements were coerced because he was led to believe that he would be charged with a lesser crime if he gave the statements. The court held a hearing on this issue, and denied the motion.

McDonald also made a motion in limine to bar evidence of McDonald's 1987 conviction for aggravated sexual assault against F.M. The court ruled that it would allow evidence of the acts giving rise to the conviction, but not of the conviction itself or the sentence imposed for that crime.

At trial, Officer Peterson's testimony was consistent with his testimony at the motion to suppress hearing. Peterson said that he spoke with F.M. at her grandmother's house, and determined that McDonald had sexual intercourse with F.M.

F.M. testified about the investigation of the crime, and McDonald's molestation of her. As to the police investigation, F.M.'s testimony was inconsistent with that of Officer Peterson. F.M. testified that she did not speak to the police at her grandmother's home. Instead, she testified that she did not tell police of the assault until she went to the police station.

As to McDonald's molestation of her, F.M. testified that in July 1993 McDonald and her two uncles came to the apartment in which she was living, and asked her to go with them to a building at 55th and Union. The men had been drinking, and once at the building, the two uncles went to a friend's apartment. McDonald stayed with F.M., and told her to go to another apartment to watch television. After about 30 minutes, McDonald came to the apartment F.M. was in, took her clothes off, and had sexual intercourse with her. F.M. also testified that McDonald had sexual contact with her four times in 1987, when she was seven years old.

Calvin Mays, one of F.M.'s uncles that was drinking with McDonald on the day of the assault, corroborated F.M.'s testimony. Calvin testified that he, his brother, McDonald, and F.M. were cleaning a building at 56th and Union. Sometime during the evening, Calvin and his brother went to a friend's apartment, but F.M. and McDonald did not accompany them. Calvin testified that he did not see either McDonald or F.M. for about 45 minutes.

McDonald's counsel chose not to present any witnesses. After the jury returned a guilty verdict, the court conducted a separate sentencing hearing, and sentenced McDonald to natural life in prison.

With new counsel, McDonald filed a direct appeal, arguing three points: (1) the trial court improperly denied his motion to suppress; (2) the evidence did not establish his guilt beyond a reasonable doubt; and (3) the trial court erroneously denied his motion in limine to bar evidence of his prior sexual assaults of F.M. The appellate court affirmed McDonald's conviction. McDonald then sought leave to appeal the

same issues in the Illinois Supreme Court, which was denied.

McDonald then filed a pro se post-conviction petition, alleging:

(1) ineffective assistance of appellate counsel;

(2) ineffective assistance of trial counsel;

(3) he was arrested without probable cause;

(4) the Illinois Habitual Criminal Act violates the Illinois constitution because it violates the single subject rule; and

(5) the admission of prior crimes evidence constitutes double jeopardy.

(*See* R. 8, Ex. F.)

In a six page written order, the trial court denied McDonald's post-conviction petition as frivolous and patently without merit. (*See* R. 8, Ex. G, pg. 6.) The court found that McDonald's claim of no probable cause for arrest was barred by res judicata. (*See id.* at pg. 3.) The court also found that McDonald failed to present any evidence to support his claims of ineffective assistance of counsel. (*See id.* at pg. 4.) Additionally, the court rejected McDonald's complaints with the Habitual Criminal Act, in accordance with *People v. Dunigan*, 165 Ill.2d 235, 209 Ill.Dec. 53, 650 N.E.2d 1026 (1995) (finding that the Act complied with the Illinois constitution). (*See* R. 8, Ex. G, pp. 56.) The court did not address McDonald's double jeopardy argument.

McDonald appealed the denial of his post-conviction petition. McDonald had the assistance of counsel on this appeal, and also filed a pro se brief. Together, McDonald and his counsel raised the following issues:

(1) ineffective assistance of trial counsel for failing to call a specific defense witness;

(2) ineffective assistance of appellate counsel;

(3) the Habitual Criminal Act is unconstitutional because it:

(a) discriminates against African–American men;

(b) re-examines prior convictions in violation of the 7th and 14th Amendments;

(c) is an ex post facto law because it inflicts greater punishment for a crime than when the crime was committed;

(d) violates the three readings and single subject rules of the Illinois constitution;

(4) McDonald's conviction came as a result of perjured testimony;

(5) the introduction of McDonald's prior conviction as evidence constitutes double jeopardy; and

(6) the appellate court should correct the mittimus to conform to the verdict and judgment

(*See* R. 8, Ex.'s H & I.)

The appellate court considered both briefs, and affirmed the denial of post-conviction relief, except to correct the mittimus to reflect that McDonald was convicted of only one count of criminal sexual assault, rather than two. (*See* R. 8, Ex. K.) The court found that McDonald waived his arguments that the Habitual Criminal Act is unconstitutional because it discriminates against African–American men and re-examines prior convictions in violation of the 7th and 14th Amendments. (*See id.* at pp. 19–20.) The court declined to address McDonald's claim of perjured testimony, finding it to be res judicata because McDonald raised it on direct appeal. (*See id.* at pp. 16, 21–22.) The court addressed the merits of the remaining claims, and found that McDonald was not entitled to relief.

McDonald then sought a re-hearing en banc of the issues raised in the appeal from denial of post-conviction relief, which the court denied. McDonald sought leave to appeal the same issues in the Illinois Supreme Court, which declined to hear the matter.

McDonald now seeks a writ of habeas corpus from this court, claiming:

(1) his conviction resulted from evidence obtained pursuant to an unlawful arrest;

(2) his conviction violates the prohibition against double jeopardy;

(3) ineffective assistance of trial counsel;

(4) ineffective assistance of appellate counsel;

(5) his sentence is unconstitutional because it deprives him of "political citizenship" and excludes him from participation in the "National Political System;"

(6) the Habitual Criminal Act discriminates against African–American men;

(7) the Habitual Criminal Act is unconstitutional because it allows the use of a prior conviction to aggravate the penalties imposed on unrelated later crimes; and

(8) the Habitual Criminal Act violates the Illinois constitution because its passage did not comply with the "three readings" rule.

(*See* Pet.)

Respondent moves to dismiss, arguing that McDonald's claims are either procedurally defaulted or without merit.

## II. DISCUSSION

The court first discusses the general rules of habeas corpus review, including procedural default of claims, and then discusses each of McDonald's claims.

### A. Standard of review

McDonald's claims are governed by 28 U.S.C. § 2254(d), which sets a high hurdle for habeas relief. The statute states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. *See Williams v. Taylor,* —— U.S. ——, —— ——, 120 S.Ct. 1495, 1516–23, 146 L.Ed.2d 389 (2000) (opinion of O'Connor, J.). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from ... relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. *See id.* at 1519 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed").

■ As the plain text of the statute reads, the "unreasonable application" clause of § 2254(d)(1) refers to cases where the state court unreasonably applies Supreme Court precedent to the facts of a particular case. *See id.* at 1520–21 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."). Whether the state court's decision was reasonable is an objective question. *See id.* at 1521 ("a federal habeas court ... should ask whether the state court's appli-

cation of clearly established federal law was objectively unreasonable."). The reasonableness question does not turn on the correctness of the state court's decision. *See id.* at 1522. Put another way, a federal habeas court should uphold a state court's decision that was reasonable, even if it was erroneous. *See id.* (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); *cf. Schaff v. Snyder* 190 F.3d 513, 523 (7th Cir.1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case).

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. *See* 28 U.S.C. 2254(e)(1); *see also Rodriguez v. Peters*, 63 F.3d 546, 554 (7th Cir.1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct"). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Procedural default**

■ Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–43, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Spreitzer v. Schomig*, 219 F.3d 639, 644–47 (7th Cir. 2000) (discussing exhaustion of habeas claims). In other words, if relief is still available to a habeas petitioner in state court, a federal habeas court cannot rule on the petition.

■ In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that were not raised in the state court proceedings. *See O'Sullivan*, 526 U.S. at 848, 119

S.Ct. 1728 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. *Cf. Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir.1999) (discussing exhaustion of claims) (citing *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

■ Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. *See Lambrix v. Singletary*, 520 U.S. 518, 523–24, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion ... on the federal question would be purely advisory.") (citing *Herb v. Pitcairn*, 324 U.S. 117, 125–26, 65 S.Ct. 459, 89 L.Ed. 789 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." *See Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). " 'In the habeas context, the application of the independent and adequate state ground doctrine ... is grounded in concerns of comity and federalism.' " *Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) (quoting *Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546). Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state ground that bars federal habeas relief. *See Harris v. Reed*, 489 U.S. 255, 258, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

■ Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. *See Edwards v. Carpenter,* —— U.S. ——, ——, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Spreitzer,* 219 F.3d at 647–48; *Rodriguez,* 193 F.3d at 917 (citing cases). With these principles in mind, the court examines McDonald's petition.

## C. McDonald's petition

McDonald raises eight claims as a basis for habeas relief. Respondent argues that most of the claims are procedurally defaulted, and the rest are without merit. McDonald filed a reply brief, which the court considers.

### 1. Unlawful arrest

McDonald first claims that his conviction was the result of evidence obtained pursuant to an arrest that was not based on probable cause. Respondent argues, and the court agrees, that this claim is based on the Fourth Amendment, and cannot be the basis for federal habeas relief.

■ In *Stone v. Powell,* the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 495, 96 S.Ct. 3037. *Stone* does not define "full and fair litigation," but the Seventh Circuit has announced a three part test to determine the question. *See Weber v. Murphy,* 15 F.3d 691, 694 (7th Cir.1994) (citing *Pierson v. O'Leary,* 959 F.2d 1385, 1391 (7th Cir.1992)). A petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if: (1) the petitioner clearly informed the state court of the factual basis for the claim and argued that those facts violate his Fourth Amendment rights; (2) the state court carefully and thoroughly analyzed the facts; and (3) the state court applied the proper constitutional case law to the case. *See id.; see also Turentine v. Miller* 80 F.3d 222, 224–26 (7th Cir.1996) (noting a split of authority among the Circuit Courts of Appeals on the test for full and fair litigation, and affirming the analysis of *Weber* ). As the Seventh Circuit noted, "habeas review of Fourth Amendment claims is reserved for instances where the state court made an egregious error ... thus effectively depriving the petitioner of the ability to vindicate his federal rights in state court." *Turentine,* 80 F.3d at 226.

In this case, the first element of the *Weber* test is not at issue. McDonald clearly informed the Illinois courts of this issue by raising it in a motion to suppress, on direct appeal, and in his post-conviction petition. Thus, McDonald has satisfied his burden of presenting the issue to the state courts.

■ McDonald's argument focuses on the second element of the *Weber* test. As explained below, the argument is an improper attack on the merits of the state court's finding of probable cause, rather than a demonstration that the state court did not carefully and thoroughly analyze the facts. *See e.g. Rivera v. Page,* No. 97 C 8381, 1998 WL 698913 at *3–4 (N.D.Ill. Oct.2, 1998) (citing *Stone v. Powell,* and refusing to consider an attack on the merits of a Fourth Amendment claim on a habeas petition). McDonald claims that the Illinois courts did not thoroughly and carefully analyze the facts because the finding of probable cause is not supported by the evidence in the record. McDonald points out the inconsistencies in testimony from Officer Peterson and F.M. concerning F.M.'s statements to police. McDonald concludes that one of the two is lying, and therefore, the police did not

have probable cause to arrest him. The record, however, amply demonstrates that the Illinois courts thoroughly and carefully analyzed the probable cause issue. The trial court held a hearing on the issue, and the appellate court addressed the argument twice—once on direct appeal, and again on appeal from the denial of McDonald's post-conviction petition. (*See* R. 8, Ex. C, pp. 4, 7–8; Ex. K, pp. 21–22.) The Illinois courts specifically addressed the inconsistencies in testimony from Officer Peterson and F.M., and found that there was probable cause to arrest McDonald despite the inconsistent testimony. (*See* R. 8, Ex. C, pp. 4, 7–8; Ex. K, pp. 21–22.) McDonald's argument attacks the merits of those decisions, which is improper under *Stone v. Powell*. Accordingly, the court denies McDonald's petition on this point.

■ Finally, the court also notes that McDonald fails on the third element of the *Weber* test, which requires the state court to apply the correct constitutional law. McDonald waives the point by making a mere cursory assertion that Illinois courts did not apply the correct constitutional law to the case. *See Johnson v. McCaughtry*, 92 F.3d 585, 596 n. 19 (7th Cir.1996) (considering an argument waived where a habeas petitioner failed to develop the argument). McDonald fails to point out the purported error, or cite what he believes the correct law to be. *See id.* Moreover, regardless of waiver, the Illinois appellate court applied the proper standard. (*See* R. 8, Ex. C, pp. 7–8.) The Illinois court stated that "[p]robable cause to arrest exists when a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense," (*see id.* at 7) which is the correct standard for determining probable cause. *See Hunter v. Bryant* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

### 2. Double jeopardy

McDonald contends that the introduction into evidence of his prior conviction for sexually assaulting F.M. constitutes a re-trial of the earlier conviction in violation of the Fifth Amendment's double jeopardy clause. McDonald's position is without merit.

■ The double jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy...." U.S. Const. amend V. "At its root, the Double Jeopardy Clause forbids the duplicative prosecution of a defendant for the 'same offence.'" *United States v. Felix*, 503 U.S. 378, 386, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) (citations omitted). Importantly for this case, "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.* at 388, 112 S.Ct. 1377. Therefore, contrary to McDonald's argument, evidence of his prior conviction of sexually assaulting F.M. was not a second prosecution for that crime. *See id.* (holding that the introduction of evidence of an earlier robbery, of which the defendant was acquitted, at a trial for a subsequent bank robbery did not violate the double jeopardy clause). The Illinois appellate court rejected McDonald's argument on direct appeal, holding that the evidence was "admissible to show the relationship and familiarity of the parties, to show the defendant's intent, to show the defendant's design or course of conduct and to corroborate the victim's testimony concerning the crime." (R. 8, Ex. C, pg.10.) The trial court also instructed the jury that it was to consider the evidence only for its proper purpose. (*See id.*) These rulings are not contrary to any Supreme Court precedent—indeed, the state court rulings were entirely consistent with *Felix*. *See Felix*, 503 U.S. at 386, 112 S.Ct. 1377. Therefore, the court denies McDonald's claim that he was subject to double jeopardy.

### 3. Ineffective assistance of trial counsel

Next, McDonald claims that he was denied effective assistance of trial counsel because counsel failed to present any witnesses on his behalf, and counsel's conduct during the trial amounted to nothing more than a "sham defense." Ineffective assistance of counsel claims are governed by the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). McDonald must first establish that his counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. *See id.* at 687–88, 104 S.Ct. 2052. Then, McDonald must demonstrate that the deficient performance prejudiced his defense, meaning that but for the deficient representation, the result of the trial would have been different. *See id.* at 694, 104 S.Ct. 2052. The court cannot grant federal habeas relief for ineffective assistance of counsel claims unless the state court's decision was contrary to, or involved an unreasonable application of, federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *see also Williams*, —— U.S. at ——–——, 120 S.Ct. at 1523–25 (opinion of O'Connor, J.).

McDonald did not raise the ineffective assistance of trial counsel issue until he sought post-conviction relief, when he argued that his trial counsel was ineffective for failing to call defense witnesses and failing to impeach the purportedly perjured testimony of Officer Peterson. The trial court found the claim to be patently without merit because McDonald failed to present any affidavits or other factual evidence to support the claim. (*See* R. 8, Ex. G, pp. 4–5.) The Illinois appellate court, in affirming the denial of post-conviction relief, thoroughly analyzed the ineffective assistance claim. The court found the claim to be without merit because: (1) McDonald failed to provide any facts, by affidavit or otherwise, as to what the testimony of his witnesses was to be; and (2) the alleged failure to impeach perjurious testimony had either been addressed on direct appeal, or was a new claim that was waived. (*See* R. 8, Ex. G, pp. 9–17.)

■ On habeas review, the court finds that McDonald has procedurally defaulted the "sham defense" claim because he failed to raise it before the state courts. *See O'Sullivan*, 119 S.Ct. at 1734. McDonald makes no attempt to fit this claim into one of the two exceptions to procedural default. For example, instead of demonstrating cause and prejudice, McDonald merely attacks his counsel's performance. Even if the court were to find that these attacks demonstrate prejudice (which the court does *not* find), McDonald fails to show cause why he was unable to present the claim to the state courts. Similarly, McDonald does not argue that he is entitled to the fundamental fairness exception, which requires a showing of actual innocence, so "that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez*, 193 F.3d at 917 (citing *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Indeed, at no time during the litigation of this case has McDonald taken the position that he is actually innocent of the crime. Accordingly, the court finds that McDonald has procedurally defaulted the "sham defense" claim.

■ Next, the court finds McDonald's claim based on a failure to present witnesses on his behalf to be without merit. It is McDonald's burden to demonstrate the alleged errors of his counsel, and the prejudice that resulted therefrom. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. To present a claim based on a failure to call a witness, McDonald must make "a specific affirmative showing as to what the missing evidence would have been ... and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir.1994) (internal citations omitted). The Illinois courts found that McDonald failed to carry this burden because he did

not present any information, by affidavit or otherwise, as to what the purported testimony of the missing witness was to be. (*See* R. 8, Ex. G, pp. 4–5, Ex. K, pp. 9–16.) Even now, on habeas review, McDonald fails to do so. Without some showing of the witness' evidence, there is simply no way for the court to determine if counsel's failure to call the witness was a professional lapse or a tactical choice. Similarly, there is no way to determine what prejudice, if any, resulted from the uncalled witness. On this bare record, the court finds the Illinois courts' rejection of McDonald's ineffective assistance claim was not contrary to, nor an unreasonable application of, any Supreme Court precedent. Accordingly, the court rejects McDonald's claim of ineffective assistance of trial counsel.

### 4. Ineffective assistance of appellate counsel

McDonald's next claim is that his counsel on direct appeal was ineffective for failing to raise meritorious issues. Although McDonald asserts there were numerous meritorious issues on direct appeal, he focuses on only one—ineffective assistance of trial counsel. The Illinois court addressed this issue in affirming the denial of post-conviction relief, and found the claim without merit because McDonald's trial counsel was not ineffective. (*See* R. 8, Ex. K, pp. 18–19.)

 When counsel files an appellate brief, it is difficult for a habeas petitioner to demonstrate that appellate counsel was ineffective for failing to raise a particular claim. *See Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)). Usually counsel is ineffective only when the omitted claim is clearly stronger than those presented. *See Smith*, 528 U.S. at ——, 120 S.Ct. at 765. In this habeas petition, McDonald maintains that the ineffective assistance of trial counsel claim is a "dead bang winner," and is "blatantly obvious," but fails to

present anything to support that position. Based upon McDonald's failure to support his ineffective assistance of trial counsel claim with any evidence, the court cannot say the issue is clearly stronger that any of the three claims raised on direct appeal. The court finds that the Illinois court properly found the ineffective appellate counsel claim to be without merit, and denies the claim as a basis for habeas relief.

### 5. Unconstitutional sentence

Next, McDonald asserts that his sentence violates the Eighth and Fourteenth Amendments because it deprives him of his "political citizenship" in the "National Political System," and because Illinois does not have authority to strip him of federal and human rights. McDonald admits that he did not raise this issue at all in the state court proceedings, but attempts to avoid procedural default by arguing cause and prejudice. McDonald makes no attempt to demonstrate a fundamental miscarriage of justice. As explained below, the court finds that McDonald procedurally defaults this claim because he demonstrates neither cause nor prejudice.

 McDonald asserts that this claim is a novel one, which can demonstrate cause. The Supreme Court has held that a habeas petitioner has cause for failing to raise a claim where the claim " 'is so novel that its legal basis is not reasonably available to counsel....' " *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir.1995) (quoting *Reed v. Ross* 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). There are three scenarios that the court considers to be such novel claims: (1) where a Supreme Court decision overrules prior precedent; (2) a decision overturns a near unanimous body of lower court authority; or (3) the claim is based on a new decision that disapproves of a practice that the Supreme Court had previously approved. *See Boyer* 55 F.3d at 298. McDonald claims that his conviction robs him of his political citizenship in the United States, in

that he can no longer vote, engage in civil matters, pay taxes, or contribute in any way to the public welfare. (*See* Pet. pg. 9.) McDonald, however, cites no new authority from any court that would qualify this claim as a novel one. Indeed, the loss of civil liberties that comes with incarceration have long been recognized as " 'justified by the considerations underlying our penal system.' " *See Hudson v. Palmer,* 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)); *see also Turner v. Safley,* 482 U.S. 78, 85–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (discussing prisoner constitutional claims). The court finds that McDonald's Eight and Fourteenth Amendment arguments are not novel issues, and therefore, McDonald does not demonstrate cause for failing to raise these issues before the state courts.

Moreover, even if the court were to find that McDonald shows cause, he makes no attempt to even address the prejudice issue. As noted earlier, McDonald must demonstrate both cause *and* prejudice to avoid procedural default. *See Rodriguez,* 193 F.3d at 917. Because McDonald presents nothing to show prejudice, the court finds that McDonald waives the issue. *See Johnson,* 92 F.3d at 596 n. 19 (7th Cir. 1996) (noting that a habeas petitioner waives undeveloped arguments).

### 6. Equal Protection

McDonald's next claim is that the Illinois Habitual Criminal Act deprives him of equal protection of the laws because it discriminates against African–American men. McDonald premises his argument on a statement allegedly made by Rita Fry, the Cook County Public Defender. According to McDonald, Ms. Fry said "whites may be less likely to get a life sentence as habitual offenders because [they] tend to get more breaks, such as plea bargaining to less serious crimes." (Pet.pg.10.) McDonald goes on to assert that his latest information shows that

there are 92 habitual criminals in Illinois prisons, 90% of which are African–American. (*See id.*) Respondent argues that the claim is procedurally defaulted because McDonald waived the claim in the Illinois courts.

As noted above, if the Illinois courts found that McDonald waived any of the claims presented here, that waiver is an independent and adequate state ground that bars federal habeas relief. *See Harris,* 489 U.S. at 258, 109 S.Ct. 1038 (citing *Wainwright,* 433 U.S. at 86–87, 97 S.Ct. 2497). McDonald did not raise the equal protection claim until he appealed from the denial of post conviction relief, which the Illinois appellate court deemed a waiver of the claim. (*See* R. 8, Ex. K, pp. 19–20.) The court stated:

> We also reject defendant's other appellate challenges to the constitutionality of the Habitual Criminal Act, that it discriminates against African–American men and that it requires the sentencing court to "re-examine" prior convictions. First, we note that defendant failed to raise either of these arguments in the trial court. Accordingly, they are waived. 725 ILCS 5/122–3 (West 1994); *People v. Erickson,* 183 Ill.2d 213, 223, 233 Ill.Dec. 319, 700 N.E.2d 1027, 1032 (1998); [*People v. Gaultney,* 174 Ill.2d 410, 422–23, 221 Ill.Dec. 195, 675 N.E.2d 102, 108 (Ill.1996) ].

(*Id.*) This finding constitutes an independent and adequate state law ground that bars federal habeas relief. *See Neal v. Gramley,* 99 F.3d 841, 843–44 (7th Cir. 1996) (finding that an unambiguous decision based on state procedural law constitutes a procedural default, notwithstanding the fact that the state court touched on the merits of the claim).

Although McDonald does not raise the issue, the court notes that the Illinois appellate court also commented on the merits of the equal protection claim. (*See* R. 8, Ex. K, pg. 20.) If a state court discusses waiver, and makes a ruling on

the merits, there is no procedural default. *See Robertson v. Hanks*, 140 F.3d 707, 709 (7th Cir.1998). But, a state court's alternative finding of no merit, or a cursory discussion of the merits, does not trump an unambiguous finding of procedural default. *See Harris*, 489 U.S. at 265 n. 10, 109 S.Ct. 1038; *see also Neal*, 99 F.3d at 843–44 (holding that an unambiguous procedural default stands, notwithstanding the state court's "glance at the merits"). In this case, the Illinois appellate court explicitly held that McDonald waived the equal protection claim, and its treatment of the merits was secondary to the waiver analysis. (*See* R. 8, Ex. K, pg. 20.) The fact that the Illinois appellate court commented on the merits of the equal protection claim does not vitiate the court's finding of waiver.

Thus, the issue is whether McDonald can avoid procedural default of his equal protection claim. McDonald urges the court to apply an "ends of justice" standard, citing *Williams v. Lockhart*, 862 F.2d 155 (8th Cir.1988) and *Witt v. Wainwright*, 755 F.2d 1396 (11th Cir.1985) as authority. According to McDonald, the ends of justice standard is determined by objective factors, and applies when there are new facts or law that warrant relitigation of the claim. The court rejects this standard. The court doubts the applicability of the cases McDonald cites because of changes in habeas law since their disposition. *See Schlup v. Delo*, 513 U.S. 298, 320–29, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (discussing the history of the fundamental miscarriage of justice exception to procedural default, beginning with the "ends of justice" standard announced in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). Contrary to McDonald's argument, and as the court has noted throughout this opinion, there are only two exceptions to procedural default: (1) cause and prejudice; and (2) fundamental miscarriage of justice. *See Edwards*, —— U.S. at ——, 120 S.Ct. at 1591; *Rodriguez*, 193 F.3d at 917.

█ The court finds that McDonald demonstrates neither cause and prejudice nor a fundamental miscarriage of justice. Initially, the court finds that the fundamental miscarriage of justice exception does not apply because, as the court has noted, McDonald never makes any assertion of actual innocence. *See Rodriguez*, 193 F.3d at 917 (noting that the fundamental miscarriage exception requires a habeas petitioner to "show that it is more likely than not that no reasonable juror would have convicted him.") (citing *Schlup*, 513 U.S. at 329, 115 S.Ct. 851). The court thus turns to cause and prejudice.

█ To demonstrate cause, McDonald must point to some external, objective, factor that prevented him from presenting the claim to the state court. *See McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Spreitzer*, 219 F.3d at 647–48. A showing that the factual basis for his claim was not reasonably available may constitute cause. *See McCleskey v. Zant*, 499 U.S. at 493, 111 S.Ct. 1454. McDonald's only basis for cause is an assertion that he could not raise this claim until he learned of the alleged statistical disparity of African–Americans affected by the Habitual Criminal Act. The court rejects this basis for cause because McDonald provides no information as to when this information became public. Without a timeframe of the availability of this information, the court cannot determine whether the lack of this information is an external, objective, cause for not presenting it to the state court. *See id.* Therefore, McDonald fails to demonstrate cause.

█ As to prejudice, McDonald must convince the court that the Illinois Habitual Criminal Act actually denied him equal protection of the laws. *Cf. Edwards*, —— U.S. at ——, 120 S.Ct. at 1591 (holding that ineffective assistance of counsel can constitute cause only if the ineffective assistance is, itself, a constitutional violation). Because McDonald offers nothing else, the court construes the purported statistical

disparity of African–American men sentenced under the Habitual Criminal Act as an attempt to demonstrate prejudice. This attempt fails for two reasons. First, McDonald offers no hard data to support his claim. McDonald's evidence is limited to: (1) his recitation of Ms. Fry's alleged statement; (2) a quotation from someone identified only as "Tim Novak, state government reporter," to the effect that the vast majority of persons sentenced under the Habitual Criminal Act are African–American men; and (3) a reference to "my (McDonald's) latest information" concerning the racial makeup of habitual criminals in Illinois prisons. (*See* Pet. pp. 9–10; Reply, pg. 14–16.) This "data" is unsubstantiated, and therefore insufficient to support habeas relief. *See United States v. Reddrick* 90 F.3d 1276, 1282–83 (7th Cir.1996) (rejecting an undeveloped equal protection argument based on the "notoriously disparate treatment of crack visa-vis other forms of cocaine" under the Federal Sentencing Guidelines); *cf. Free v. Peters,* 12 F.3d 700, 704–07 (7th Cir.1993) (rejecting a "fatally flawed" study of jury comprehension as a basis for habeas relief). In short, McDonald presents no reliable evidence to support his equal protection argument.

Second, the Supreme Court has rejected the use of statistical evidence to demonstrate equal protection claims on habeas review. *See McCleskey v. Kemp,* 481 U.S. 279, 292–99 & 309–19, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (rejecting an equal protection claim based on statistical disparities in death sentences). Thus, notwithstanding the paucity of McDonald's evidence, the thrust of McDonald's argument is without merit. *See id.* In sum, the court finds that McDonald procedurally defaulted the equal protection claim, and fails to fit the claim into one of the exceptions to procedural default.

## 7. Unconstitutional sentence enhancement

Somewhat cryptically, McDonald argues that the Habitual Criminal Act is an unconstitutional ex post facto law because it relies on an earlier conviction to aggravate the penalty of a later crime. The Illinois appellate court addressed this claim on its merits (*see* R. 8, Ex. K, pg. 19), so it has not been procedurally defaulted. *See Robertson,* 140 F.3d at 709 (noting that there is no procedural default if a state court makes a decision on the merits).

According to McDonald, at the time he committed his crime, it was punishable by a term of imprisonment of six to thirty years, but due to his status as a habitual criminal he received a sentence of natural life imprisonment.[2] McDonald argues that this aggravated punishment violates the constitutional prohibition against ex post facto laws. The court rejects McDonald's argument.

 The constitutional prohibition against ex post facto laws is intended to warn the public of criminal conduct, and allow individuals to rely on the meaning of criminal statutes until the legislature explicitly changes them. *See Carmell v. Texas,* — U.S. ——, —— n. 21, 120 S.Ct. 1620, 1632 n. 21, 146 L.Ed.2d 577 (2000); *United States v. Vivit,* 214 F.3d 908, 918 (7th Cir.2000). In particular, the ex post facto prohibition is a "check [on] governmental power 'by restraining arbitrary and potentially vindictive legislation.'" *Vivit,* 214 F.3d at 918–19 (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). "'Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Id.* The Illinois Habitual Criminal Act in its current form has been on the books in

**2.** For the limited purpose of this opinion, the court accepts as true McDonald's assertion that the crime for which he was convicted

carries a punishment of six to thirty years imprisonment, absent the application of the Habitual Criminal Act.

**1008**

Illinois since 1980. *See Dunigan,* 209 Ill. Dec. 53, 650 N.E.2d at 1028 (discussing the history of Illinois habitual criminal laws, and noting that the laws have been in effect since 1883, except for a fifteen year gap between 1963 and 1978). McDonald could not be surprised by a law that had been in effect for thirteen years at the time of his crime. *Cf. Vivit,* 214 F.3d at 918–19 (holding that a defendant had notice of a 1987 criminal statute when he committed crimes between 1993 and 1996). And, the Supreme Court has repeatedly upheld habitual criminal statutes against ex post facto arguments. *See Parke v. Raley,* 506 U.S. 20, 27, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (citing cases); *see also McDonald v. Commonwealth of Massachusetts,* 180 U.S. 311, 312–13, 21 S.Ct. 389, 45 L.Ed. 542 (1901) (holding that a habitual criminal statute, "imposing a punishment on none but future crimes, is not ex post facto."). Accordingly, the court finds that the Illinois appellate court's determination that the Illinois Habitual Criminal Act is not an improper ex post facto law is not contrary to, nor an unreasonable application of, clearly established federal law as announced by the Supreme Court.

### 8. The Habitual Criminal Act violates the Illinois constitution

Finally, McDonald argues that the Habitual Criminal Act is invalid because the Illinois legislature did not follow the required "three readings" rule of the Illinois constitution. McDonald's argument is moot because the Illinois Supreme Court explicitly rejected this argument in an earlier case. *See Dunigan,* 209 Ill.Dec. 53, 650 N.E.2d at 1033–35 (rejecting the argument under the Illinois enrolled bill rule). The court will not disturb the Illinois Supreme Court's decision about the Habitual Criminal Act's compliance with the Illinois constitution. As McDonald does not otherwise claim a violation of federal law, the court rejects this argument as a basis for habeas relief. *See* 28 U.S.C. § 2254(a).

## III. CONCLUSION

For the foregoing reasons, the court denies McDonald's petition for a writ of habeas corpus.

IT IS SO ORDERED.