2020 IL App (5th) 170264-U

NO. 5-17-0264

NOTICE
Decision filed 09/29/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-587 |
| | ) | |
| TRUMEL FREEMAN, | ) | Honorable |
| | ) | Jennifer L. Hightower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where postconviction counsel provided the defendant with reasonable assistance, and the circuit court did not err in dismissing the defendant's second amended postconviction petition, and any argument to the contrary would lack merit, the defendant's court-appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Trumel Freeman, pursuant to a fully negotiated plea agreement with the State, pleaded guilty to one count of armed robbery and was sentenced to imprisonment for 18 years. He did not seek to withdraw his guilty plea, and he did not attempt to appeal from the judgment of conviction. Approximately 14 months after the plea, the defendant filed a *pro se* petition for postconviction relief. Appointed postconviction counsel filed an amended postconviction petition and eventually filed a second amended postconviction petition. On the State's motion, the circuit court dismissed the second amended petition. The defendant now

1

appeals from that dismissal. The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant in this appeal, but OSAD has concluded that the appeal lacks merit. On that basis, OSAD has filed a motion to withdraw as counsel, along with a memorandum of law in support of the motion. See *Finley v. Pennsylvania*, 481 U.S. 551 (1987). OSAD served the defendant with a copy of its *Finley* motion and its supporting memorandum of law. This court provided the defendant with ample opportunity to file a written response to OSAD's motion, or a memorandum, brief, etc., explaining why his appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and accompanying memorandum, as well as the entire record on appeal, and has determined that this appeal does not present any issue of arguable merit. Accordingly, OSAD is granted leave to withdraw as counsel for the defendant, and the judgment of the circuit court is affirmed.

¶ 3                                                    BACKGROUND

¶ 4     In April 2014, a grand jury returned an indictment charging the defendant with three counts of armed robbery. The three counts stemmed from three separate robberies, of three different complainants, committed on three different days. Count I alleged that the defendant was "armed with a firearm" while committing a robbery in 2012. See 720 ILCS 5/18-2(a)(2) (West 2012). Counts II and III alleged that he was "armed with a dangerous weapon, a BB gun" while committing robberies in 2013 and 2014, respectively. See *id.* § 18-2(a)(1). Armed robbery was a Class X felony, but armed robbery as charged in count I—that is, robbery while armed with a firearm—carried a mandatory 15-year sentencing enhancement. See 720 ILCS 5/18-2(b) (West 2014). The defendant's public defender filed a motion to suppress statements that the defendant had made to police interrogators.

¶ 5　On September 3, 2014, the defendant, his public defender, and an assistant state's attorney appeared before the circuit court. The public defender informed the court that the parties had reached a plea agreement whereby the defendant would plead guilty to armed robbery as charged in count II and would be sentenced to imprisonment for a term of 18 years, while counts I and III would be dismissed, plus a petition to revoke probation in an unrelated felony case would be dismissed.

¶ 6　The circuit court read aloud from count II of the indictment and asked the defendant whether he understood the charge, and the defendant indicated that he did understand it. The court then read aloud the statute that count II charged the defendant with violating, and the defendant indicated his understanding of the statute. The court asked the defendant how he wished to plead to that particular charge, and the defendant answered, "Guilty." The court admonished the defendant of his right to plead guilty or not guilty, his right to a trial, whether by a jury or by a judge alone, his right not to testify at the trial, his rights to cross-examine the State's witnesses and to subpoena witnesses of his own, his right to be represented by an attorney or to represent himself, the presumption of innocence, and the State's burden of proof. The defendant indicated that he understood all these matters and did not have any questions about them. In response to further queries from the circuit court, the defendant indicated his understanding that a guilty plea would involve waiving the various rights he possessed, and he also indicated that he was satisfied with his public defender's representation. The court informed the defendant that his charge was a Class X felony punishable, *inter alia*, by imprisonment for a term of 6 to 30 years, and that a prison term would be followed by a 3-year term of mandatory supervised release (MSR), and the defendant indicated that he understood the possible penalties.

¶ 7    The State provided a factual basis for the defendant's guilty plea, stating that the State, at a trial, would call as witnesses various unnamed Alton police officers and the complainant, and those witnesses would testify that on August 24, 2013, an individual followed the complainant from his convenience store to his residence, where the individual "by the use of a BB gun" took cash from the complainant "by threatening imminent use of force", and the individual was later identified as the defendant. Then, in response to further inquiries from the court, the defendant indicated that he was pleading guilty freely and voluntarily, that he had discussed the plea with his public defender, that nobody had used force or threats in an attempt to cause him to plead guilty, and that nobody had promised him anything outside the terms of the plea agreement. The court announced that it would bind itself to the parties' plea agreement. Again, the court asked the defendant whether he wanted to plead guilty to count II, and the defendant answered in the affirmative. Finding that the defendant was pleading guilty knowingly, freely, and voluntarily, the court accepted the plea. In accordance with the plea agreement, the court sentenced the defendant to 18 years of imprisonment followed by 3 years of MSR. The defendant indicated that he understood the sentence, that it was the sentence the parties had negotiated, and that he did not have any questions about it. The court dismissed the other two armed-robbery counts against the defendant. Finally, the court admonished the defendant as to his right to an appeal, including the necessity of a motion to withdraw the guilty plea, and the defendant indicated his understanding. The court entered a written judgment that reflected the agreed-upon sentence of imprisonment.

¶ 8    The defendant did not file a motion to withdraw his guilty plea. He did not attempt to appeal from the judgment of conviction.

¶ 9    In November 2015, the defendant filed a *pro se* petition for postconviction relief. He claimed that he had been deprived of the effective assistance of counsel and the due process of

4

law. The defendant alleged that (1) the State failed to establish that the defendant's BB gun was a "dangerous weapon", and therefore one of the elements of armed robbery was not established; (2) his public defender never argued that the charging instrument's armed-robbery count, which "label[ed]" the BB gun as a dangerous weapon, was defective, and he never sought to amend the armed-robbery count; and (3) his public defender allowed the defendant to be sentenced for armed robbery even though an element of that offense had not been established. For relief, the defendant requested that the circuit court "amend" the armed-robbery count so as to charge robbery. In December 2015, the circuit court found that the *pro se* petition was not frivolous or patently without merit. The court advanced the petition to the second stage of postconviction proceedings and appointed postconviction counsel for the defendant.

¶ 10    On February 11, 2016, the circuit court received a letter from the defendant, wherein he stated that he was requesting, as postconviction relief, that the court amend the charge from armed robbery to simple robbery.

¶ 11    In April 2016, the defendant filed, through postconviction counsel, an amended postconviction petition. The amended petition set forth several claims of constitutionally ineffective assistance by the public defender who had represented the defendant at the guilty-plea hearing (hereinafter, plea counsel). For relief, the amended postconviction petition requested that the court "release [the defendant] from custody, vacate the [j]udgment or in the alternative grant him a new trial."

¶ 12    On July 7, 2016, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Counsel certified that he had consulted with the defendant in person and by mail in order to ascertain the defendant's contentions of deprivation of constitutional right, had examined the trial court file and the report of proceedings of the plea of

5

guilty, and had amended the *pro se* petition for an adequate presentation of the defendant's contentions.

¶ 13    Also on July 7, 2016, the court received another letter from the defendant, wherein the defendant stated that he "disagreed with the relief that [postconviction counsel] asked for." The defendant wrote that he was not seeking a new trial, but he wanted the court to release him from custody, to vacate the judgment, or to amend the charge from armed robbery to robbery.

¶ 14    On September 2, 2016, the court received another letter from the defendant, stating that he wanted to have the charge amended from armed robbery to simple robbery.

¶ 15    On October 26, 2016, the defendant, postconviction counsel, and an assistant state's attorney appeared before the circuit court. In detail, the court reviewed the procedural history of the postconviction proceedings, and it read from letters that the defendant had mailed to the court. Then, the court asked the defendant whether he, on five separate occasions, had indicated that the relief he wanted was for the court to amend his charge from armed robbery to simple robbery, and whether he, on at least two occasions, had indicated that he did not want a trial, and the defendant answered, "Correct." At that point, the court informed the defendant that it did not have the authority to amend the charge, and that if the court agreed with the defendant on the postconviction claim of ineffective assistance of plea counsel, the only relief that the court could grant would be a trial. The defendant indicated his understanding. Later in the hearing, the defendant told the court that he had learned, through his own legal research, that the charge to which he had pleaded guilty could not be amended. Still later in the hearing, the defendant clarified that he was claiming that his guilty plea was involuntary due to his being manipulated by plea counsel. The defendant explained that he did not learn until sometime after the plea that "these weapons alleged to be used were not dangerous weapons." The defendant seemed to be claiming that plea counsel had

6

manipulated him into pleading guilty by failing to inform him that the BB gun did not qualify as a "dangerous weapon" for purposes of the armed-robbery statute that he had pleaded guilty to violating. See 720 ILCS 5/18-2(a)(1) (West 2014). Postconviction counsel stated that he would prepare and file a second amended petition for postconviction relief.

¶ 16 On March 20, 2017, the defendant filed, through postconvicton counsel, a second amended postconviction petition. The second amended petition is the subject of the instant appeal. The second amended petition explicitly incorporated by reference all of the claims that the defendant had presented in his *pro se* postconviction petition, filed in November 2015. (Those *pro se* postconviction claims are summarized *supra*.) Also, the second amended petition set forth multiple claims of constitutionally ineffective assistance by plea counsel. Specifically, it alleged that plea counsel (1) failed "to require proof that the weapon alleged to be used, 'a BB gun' was a dangerous weapon"; (2) failed "to challenge the sufficiency" of the indictment; (3) failed "to challenge the charge, allowing it to remain Armed Robbery, rather than Simple Robbery"; (4) failed "to challenge the statement of the 'victim' that the 'weapon' was 'black' "; (5) allowed the defendant "to plead to an 18 year sentence" even though the sentence was "not possible" in light of the failure to establish that the defedant's BB gun was a dangerous weapon; (6) failed to file a motion to suppress the defendant's statements to police interrogators; and (7) failed to "go forward" with a motion to suppress evidence of the BB gun that police had seized. For relief, the defendant prayed that the court "release Defendant from custody, vacate the Judgment or in the alternative grant him a new trial."

¶ 17 A few weeks after the defendant filed his second amended postconviction petition, the State filed a motion to dismiss it. On June 12, 2017, the circuit court entered a written order granting the State's motion to dismiss the defendant's second amended postconviction petition. The court

7

discussed each of the claims presented in that petition, and concluded that the defendant had failed to make a substantial showing of a constitutional violation. The defendant filed a notice of appeal from the dismissal of his petition, thus perfecting the instant appeal.

¶ 18                                        ANALYSIS

¶ 19    As previously noted, OSAD has filed a *Finley* motion to withdraw as counsel for the defendant, along with a memorandum of law in support of the motion. In the memorandum, OSAD discusses two potential issues in this appeal, *viz.*: (1) whether the circuit court erred in dismissing the defendant's second amended postconviction petition and (2) whether postconviction counsel complied with Rule 651(c). An examination of the record on appeal reveals that neither of these potential issues has any merit.

¶ 20    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a three-stage mechanism by which a criminal defendant may collaterally attack his conviction based on a substantial denial of his constitutional rights during the proceedings that resulted in the conviction. *Id.* § 122-1(a)(1); *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Proceedings under the Act are commenced by the criminal defendant's filing of a petition in the circuit court in which the conviction took place. 725 ILCS 5/122-1(b) (West 2016). If a postconviction petition survives the first stage of postconviction proceedings, that is, if the petition is not summarily dismissed as frivolous or patently without merit, it advances to the second stage of postconviction proceedings. *Id.* § 122-2.1(b); *People v. Hodges*, 234 Ill. 2d 1, 9-12 (2009).

¶ 21    At the second stage of postconviction proceedings, postconviction counsel may be appointed for an indigent defendant. 725 ILCS 5/122-4 (West 2016). The State may either answer the postconviction petition or move to dismiss it. *Id.* § 122-5. If the State moves to dismiss the petition, the circuit court must decide whether to grant the State's motion or to advance the petition

to the third stage of postconviction proceedings, where an evidentiary hearing is held. *People v. Dupree*, 2018 IL 122307, ¶ 28. At the second stage, all of the petition's allegations must be taken as true, unless they are affirmatively rebutted by the record. *Id.* ¶ 29. There is no room for judicial fact-finding or credibility determinations; those tasks are reserved for the third-stage evidentiary hearing, if one is held. *Id.* The court merely determines the legal sufficiency of the petition's allegations. *Id.* The dispositive question for the court is whether the postconviction petition's allegations, supported by affidavits, records, or other evidence, make a substantial showing of a deprivation of constitutional rights. *Id.* ¶ 28. If there is no substantial showing of constitutional deprivation, the court must dismiss the petition; if a substantial showing is made, the petition is advanced to the third stage, where an evidentiary hearing is held and the court engages in fact-finding and credibility determinations. *Id.* ¶¶ 28-29. This court reviews *de novo* the dismissal of a postconviction petition. *People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 22 A key fact in this case is that the defendant pleaded guilty. He pleaded guilty to one count of armed robbery (see 720 ILCS 5/18-2(a)(1) (West 2014)) after the circuit court thoroughly admonished him in compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) and after the court carefully determined that his plea was voluntary, in accordance with Illinois Supreme Court Rule 402(b) (eff. July 1, 2012). The applicable armed-robbery statute stated that a person committed armed robbery when he or she committed robbery and "carrie[d] on or about his or her person or [was] otherwise armed with a dangerous weapon other than a firearm." 720 ILCS 5/18-2(a)(1) (West 2014).

¶ 23 The first potential issue in this appeal, as discussed by OSAD in its memorandum of law, is whether the circuit court erred in dismissing the defendant's second amended postconviction petition. This issue can be rephrased as whether the defendant, in his second amended

postconviction petition, made a substantial showing of a constitutional violation. In its memorandum, OSAD discusses all of the claims set forth in the defendant's second amended petition. This court, too, will discuss those claims.

¶ 24    In regard to the defendant's postconviction claim that plea counsel was constitutionally ineffective for failing to "require proof" that the defendant's BB gun qualified as a "dangerous weapon" under the armed-robbery statute, OSAD correctly notes that the defendant pleaded guilty to that offense, thus waiving his right to a trial, and therefore there was no occasion for counsel to "require proof" of the dangerous quality of the BB gun. A defendant's valid plea of guilty to an offense relieves the State of the burden of proving any element of the offense. See, *e.g.*, *People v. Rhoades*, 323 Ill. App. 3d 644, 651 (2001) (a guilty plea "removes the prosecution's burden of proof, as it supplies both the evidence and the verdict").

¶ 25    As for the postconviction claim that plea counsel was ineffective for failing to "challenge" the complainant's "statement" that the robber's weapon was black, here too the defendant's guilty plea eliminated the opportunity for counsel to take the action that the defendant claimed he should have taken. Without a trial, and testimony by the complainant, there was no opportunity for counsel to challenge the complainant's statement describing the gun. (In addition, the defendant did not even attempt to explain how his case might have been affected by counsel's failure to "challenge" the complainant's "statement" about the weapon's color.)

¶ 26    In regard to the postconviction claim that plea counsel was ineffective for failing to challenge the sufficiency of the indictment or for failing to challenge count II of the indictment, OSAD correctly notes that count II of the indictment—the armed-robbery count to which the defendant pleaded guilty—specified that U.S. currency was taken during the robbery, specified the name of the person from whom the money was taken, specified that the defendant threatened the

10

imminent use of force, and specified that he was armed with a dangerous weapon, a BB gun. This court notes that count II also included the defendant's name, the date of the alleged robbery, the county in which the robbery was committed, and the name and statutory provision of the offense. Counts I and III of the indictment were similarly complete. In short, the indictment informed the defendant of the exact offense charged, with specificity sufficient to allow him to prepare a defense and to allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct, and therefore the indictment was sufficient. See *People v. Benitez*, 169 Ill. 2d 245, 257 (1996). There was no apparent basis for challenging the indictment or any particular count therein.

¶ 27    Another of the defendant's postconviction claims was that plea counsel was ineffective for allowing the defendant "to plead to an 18 year sentence" even though the sentence was "not possible" in light of the failure to establish that the defedant's BB gun was a dangerous weapon. As previously discussed, the defendant's knowing and voluntary guilty plea, in and of itself, established that the BB gun was a dangerous weapon, as alleged in the indictment. Because there was no trial, the State had no occasion or need to prove the BB gun's dangerousness. (Of course, if the defendant had persisted in his plea of not guilty and the cause had proceeded to trial, the State would have been obliged to prove that the BB gun was a dangerous weapon. See, *e.g.*, *People v. Thorne*, 352 Ill. App. 3d 1062, 1072 (2004), wherein the court held that the issue of whether the defendant's BB gun qualified as a dangerous weapon under the armed-robbery statute was a question of fact for the jury to determine.) Once the defendant's knowing and voluntary guilty plea established all the elements of armed robbery, a Class X felony, the defendant was subject to a sentence of imprisonment for a term of 6 to 30 years. See 730 ILCS 5/5-4.5-25(a) (West 2012). The defendant's 18-year sentence certainly fell within this statutory range, and therefore the sentence was indeed possible in this case.

¶ 28    The defendant's final postconviction claim was that plea counsel was ineffective for failing to file a motion to suppress the defendant's statements to police interrogators and for failing to "go forward" with a motion to suppress evidence of the BB gun that police had seized.  As OSAD notes, the defendant's allegation that counsel failed to file a motion to suppress statements is affirmatively rebutted by the record.  A motion to suppress statements is part of the record on appeal; the motion was filed by plea counsel, on behalf of the defendant, on August 5, 2014, and it was scheduled for a hearing on September 4, 2014.  The hearing on the suppression motion was not held, however, because the defendant pleaded guilty, pursuant to his fully negotiated plea agreement, on September 3, 2014.  As for a suppression motion concerning the BB gun, nothing in the record indicates that the police seized a BB gun in this case, and the defendant did not offer any rationale for a suppression motion, any reason to think that one might have been successful if filed, or any indication of how suppression might possibly have affected his case.

¶ 29    In sum, the defendant's second amended postconviction petition did not make a substantial showing of a constitutional violation, and therefore the circuit court did not err in dismissing the petition.  This court agrees with OSAD that any argument to the contrary would be meritless.

¶ 30    The second potential issue identified by OSAD is whether postconviction counsel complied with Rule 651(c).  Postconviction counsel filed a certificate of compliance with Rule 651(c), and his certificate closely tracked the language of the rule itself.  The certificate, wherein counsel described how he fulfilled his duties under the rule, creates a presumption that he fulfilled those duties and provided the defendant with the required level of postconviction legal assistance, which is a reasonable level of assistance.  See, *e.g.*, *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. Nothing in the record rebuts this presumption.

¶ 31                                  CONCLUSION

¶ 32    With his second amended postconviction petition, the defendant failed to make a substantial showing of a constitutional violation. Therefore, the circuit court did not err in dismissing the petition. No meritorious argument to the contrary is possible. Postconviction counsel provided the defendant with a reasonable level of assistance, as required by law. Again, no contrary argument would have merit. Accordingly, OSAD is granted leave to withdraw as counsel for the defendant in this appeal, and the judgment of the circuit court is affirmed.

¶ 33    Motion granted; judgment affirmed.