2021 IL App (1st) 190248-U

FIFTH DIVISION
Order filed: May 14, 2021

No. 1-19-0248

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 07 CR 25620 |
| | ) | |
| CARLOS MARTINEZ, | ) | Honorable |
| | ) | Nicholas Ford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's first-stage summary dismissal of the defendant's postconviction petition is reversed where the defendant stated the gist of a constitutional claim for ineffective assistance of counsel.

¶ 2    The defendant, Carlos Martinez, appeals from an order of the circuit court of Cook County, dismissing his postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 122-1 *et seq*. (West 2016)) at the first stage. On appeal, he contends that the circuit court erred in dismissing his petition because he raised two arguable claims: (1) ineffective assistance of counsel

and (2) actual innocence. For the reasons that follow, we reverse and remand the cause for second stage proceedings.

¶ 3    The defendant was charged by indictment with, *inter alia*, four counts of attempted first-degree murder following the November 18, 2007 shooting resulting in serious injuries to two victims—Alberto Ayala and Mauro Ibarra.

¶ 4    On June 10, 2009, following a conference pursuant to Supreme Court Rule 402 (eff. June 1, 2020), the defendant pled guilty to one count of attempted first-degree murder in exchange for a term of 25 years' imprisonment and dismissal of the remaining charges against him. The circuit court admonished the defendant of his right to a jury trial, including his right to "confront and cross-examine witnesses, present evidence, remain silent, [and] rely on the State's inability to prove [him] guilty." The defendant acknowledged that he understood the rights he was waiving.

¶ 5    The parties stipulated that the factual basis for the plea were "the facts [the court] heard" as well as the allegations in the complaint for preliminary examination—that on November 18, 2007, at 2712 S. Troy in Chicago, the defendant "knowingly and without legal justification" shot Ayala in the torso with a .380 caliber semi-automatic pistol. The circuit court found the stipulation sufficient, accepted the guilty plea, found that the defendant's decision was made "freely and voluntarily," and sentenced him to 25 years' imprisonment to be served at 85%. The defendant did not file a direct appeal.

¶ 6    On September 19, 2018, the defendant filed a *pro se* postconviction petition under the Act raising multiple claims. Relevant to this appeal, the defendant alleged that his trial counsel rendered ineffective assistance and that he was "actually innocent" of the crime of attempted first-degree murder.

¶ 7    As to the claim of ineffective assistance of counsel, the defendant alleged that his trial counsel's performance was deficient in the following ways: (1) failing to investigate, obtain, and truthfully inform him of the results of the gunshot residue test and fingerprint test, which revealed no gunshot residue was found on his hands or jacket and his fingerprints were not on the gun; (2) failing to file a motion to suppress his coerced custodial statement before he pled guilty; and (3) failing to file a motion to suppress a suggestive photograph lineup in which he was the only Hispanic male in a lineup of African American males.

¶ 8    In support of his claim for ineffective assistance of counsel, the defendant attached the following documents to his petition: (1) the results of the gunshot residue test on his hands and jacket; (2) the results of the fingerprint analysis of the firearm used in the shooting; (3) three of his own affidavits averring that his attorney misinformed him of the results of the gunshot residue test and fingerprint analysis, that he was not read his *Miranda* warnings before interrogation, that he was beaten by police into confessing to a crime he did not commit, that he informed counsel his confession was coerced but counsel did nothing, and that counsel told him he would file a motion to "throw away" his "line up picture" but counsel did nothing; (4) a letter from the Torture Inquiry and Relief Commission confirming receipt of his request to submit a claim; (5) a facsimile of a photograph of him taken shortly after being taken into custody to support his argument that he had facial swelling caused by the beating from police; (6) a supplemental investigation report; (7) a November 19, 2007 lineup/photospread advisory form for Ibarra; (8) the affidavit of his sister, Elizabeth Martinez, averring that she saw him in "Bond Court" on November 19, 2007, that his face was swollen, his shirt was ripped and torn, and that a lawyer told her that the defendant confessed to the crime after the police beat him; and (9) the affidavit of his girlfriend, Vanessa

Rivera, averring that she also saw him on November 19, 2007, that he was walking as if he was "hurting really bad," his face was swollen, his shirt was ripped, and he told her that he was beaten by the police and made a statement under duress after being beaten.

¶ 9 As to his claim of actual innocence, the defendant argued that new evidence revealed that he did not commit the crime for which he was convicted. Specifically, he cited the lack of gunshot residue on his hands and jacket, the fact that his fingerprints were not on the gun used in the shooting, and Benjamin Nieves's admission that his brother Cesar Nieves (now deceased) confessed to the shooting before he died. In support of his claim for actual innocence, the defendant attached the following to his petition: (1) his own affidavit blaming Cesar for the shooting; (2) Benjamin's affidavit averring that his brother Cesar confessed to the shooting before he died; (3) the results of the gunshot residue test on his hands and jacket; and (4) the results of the fingerprint analysis of the firearm.

¶ 10 On December 14, 2018, the circuit court summarily dismissed the petition finding the claims without merit. This appeal followed.

¶ 11 On appeal, the defendant asserts that the circuit court erred when it summarily dismissed his postconviction petition at the first stage of proceedings because he raised arguable claims of: (1) ineffective assistance of counsel and (2) actual innocence. We agree.

¶ 12 Pursuant to the Act, a postconviction proceeding has three distinct stages. 725 ILCS 5/122-1 *et seq*. (West 2016); *People v. English*, 2013 IL 112890, ¶¶ 22-23. In the first stage, the defendant files a petition, and the circuit court determines whether it is frivolous or patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). To survive dismissal at this stage, a petition must present only the "gist" of a constitutional claim. *Id.* (citing *People v. Porter*, 122 Ill. 2d 64, 74

(1988)). The term "gist" describes what the petitioner must allege at the first stage; it is not the legal standard used by the court to evaluate the petition. *People v. Hodges*, 234 Ill. 2d 1, 11 (2009). The legal standard is whether the petition is frivolous or patently without merit, meaning it has no arguable basis in law or fact. *Id*. at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id*. In this stage, the allegations of fact are considered true, "so long as those allegations are not affirmatively rebutted by the record." *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47. We review the summary dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 11.

¶ 13    The defendant maintains that he set forth an arguable claim of ineffective assistance of counsel. He asserts that his trial counsel's performance was deficient in the following ways: (1) failing to investigate, obtain, and truthfully inform him of the results of the gunshot residue test and fingerprint test, which revealed no gunshot residue was found on his hands or jacket and his fingerprints were not on the gun; (2) failing to file a motion to suppress his coerced custodial statement before he pled guilty; and (3) failing to file a motion to suppress a suggestive photograph lineup in which he was the only Hispanic male in a lineup of African American males.

¶ 14    To succeed on an ineffective assistance of counsel claim, the defendant must demonstrate that his trial counsel's performance was deficient and that he suffered prejudice because of his counsel's deficient conduct. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). At the first stage of postconviction proceedings, a petition alleging ineffective assistance of counsel may not be summarily dismissed if it is arguable that (1) counsel's performance fell below an objective standard of reasonableness and (2) the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17. An allegation of ineffective assistance of counsel fails if either prong of the *Strickland* standard

is not satisfied. See *Strickland*, 466 U.S. at 670. Where a case may be disposed of because of a lack of sufficient prejudice, "that course should be taken." *Id.* at 697. Broad conclusory allegations of ineffective assistance of counsel are insufficient to avoid summary dismissal at the first stage. *People v. Delton*, 227 Ill. 2d 247, 258 (2008).

¶ 15    When, as here, the defendant was convicted pursuant to a negotiated guilty plea, and he alleges that his counsel's deficient performance led him to plead guilty "we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). While we ordinarily attribute "a strong presumption of reliability to judicial proceedings, 'we cannot accord' any such presumption 'to judicial proceedings that never took place.' " *Id*. Therefore, we instead determine whether the defendant was prejudiced by the " 'denial of the entire judicial proceeding *** to which he had a right.' " *Id.* When a defendant alleges that his counsel's deficient performance caused him to plead guilty rather than proceeding to trial, he can establish prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*.

¶ 16    We first address the defendant's assertion that he set forth an arguable claim that his counsel was ineffective by failing to investigate, obtain, and truthfully inform him of the results of both a gunshot residue test and fingerprint test. The defendant maintains that the results of the gunshot residue test were negative and that his fingerprints were not on the gun, but that counsel told him the results of the gunshot residue test were positive and that his fingerprints were all over the gun. In his affidavit attached to the petition the defendant stated, "I was told I tested positive for GSR on my hands and my fingerprints were all over the gun, even though, I knew it wasn't

true, because I had not shot a gun." He further averred in his affidavit, "Had I known, the State Police Lab shown I did not have GSR on my hands and [my] fingerprints was not on the gun, bullets of gun clip, I would not have pled guilty in this case."

¶ 17    The defendant also attached to the petition the results of the gunshot residue test and the fingerprint testing, which revealed that the jacket may not have "contacted a PGSR related item or may not have been in the environment of a discharged firearm," and if it was, "the particles were not deposited, were removed by activity, or were not detected by the procedure." The report also revealed that the defendant may not have discharged a firearm with either hand, and if he did, "the particles were removed by activity, were not deposited, or were not detected by the procedure." The latent fingerprint impression on the firearm that was suitable for comparison did not match the defendant's fingerprint card and the results revealed that "inked palm prints" were "needed for a conclusive comparison."

¶ 18    The State maintains that the results of both the gunshot residue test and the fingerprint test are inconclusive, would not have provided a plausible defense at trial, and are therefore, insufficient to establish prejudice. However, this is not the appropriate lens with which to view the issue at the first stage of proceedings. Our task at this stage is not to weigh the evidence or make credibility determinations. Rather, we take all allegations alleged in the defendant's postconviction petition and supporting affidavits as true unless positively rebutted by the record. *Thomas*, 2014 IL App (2d) 121001, ¶ 47. We then ascertain whether the defendant made an arguable showing that he was prejudiced because of counsel's deficient conduct. *Hodges*, 234 Ill. 2d at 17; see *Strickland*, 466 U.S. at 697. We find that he has made such a showing. Nothing in the defendant's affidavit is positively rebutted by the record. We, therefore, must accept the contents of his

affidavit as true and, given the substance of his affidavit as well as the results of both the gunshot residue test and fingerprint test, we find that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S. Ct. at 1965.

¶ 19   We next address the defendant's argument that he set forth an arguable claim that his counsel was ineffective for failing to file a motion to suppress his coerced confession. Generally, great deference is given to counsel's decision whether to file a motion to suppress, and for a defendant to succeed on a claim of ineffective assistance of counsel for failure to file such a motion, he must establish that a reasonable probability exists "both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed." *People v. Martinez,* 348 Ill. App. 3d 521, 537 (2004). However, as previously discussed, where the defendant has been convicted pursuant to a negotiated guilty plea, we do not ask whether the outcome of trial would have been different were it not for counsel's deficient performance because there was no trial. *Lee*, 137 S. Ct. at 1965.  Instead, we ask whether there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Id.*

¶ 20   The defendant maintains in three of his affidavits attached to the petition that he was beaten repeatedly by officers before confessing to the crime, that he was denied an attorney at the time of his interrogation, and that he was was not read *Miranda* warnings. He also asserts in an affidavit that he informed counsel he "did not shoot a gun that night" and "did not commit the crime," but that he only confessed because he was beaten by police officers. He attached two additional affidavits from his sister, Elizabeth and his girlfriend, Vanessa. Elizabeth stated that she saw the

defendant in "Bond Court" on November 19, 2007, that his face was swollen, his shirt was ripped and torn, and a lawyer told her the defendant confessed to the crime after the police beat him. Vanessa stated that she also saw the defendant on November 19, 2007, that he was walking as if he was "hurting really bad," his face was swollen, his shirt was ripped, and he told her that he was beaten by the police and made a statement "under duress" after being beaten.

¶ 21    The State argues that the defendant's evidence in support of this claim is limited, that neither Elizabeth nor Vanessa had firsthand knowledge of whether he was beaten by police, and there was sufficient evidence, in the form of testimonial, physical, and circumstantial evidence, to prove beyond a reasonable doubt that the defendant shot Ayala. Again, our task at the first stage of postconviction proceedings is not to determine the veracity or weight of the evidence presented. Instead, we take all allegations in the defendant's petition and supporting allegations as true unless affirmatively rebutted by the record. The fact that other evidence conflicts with the defendant's evidence does not mean the evidence is positively rebutted. *People v. Robinson*, 2020 IL 123849, ¶ 60. Evidence is affirmatively rebutted by the record when the truth of the evidence could never be accepted such as when it is "affirmatively and incontestably demonstrated to be false or impossible." *Id*. The defendant's claims are not affirmatively rebutted by the record. There is no evidence that counsel filed a motion to suppress the defendant's confession nor is there any record of a hearing on the motion. Therefore, taking the defendant's allegations as true, he established a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Lee*, 137 S. Ct. at 1965.

¶ 22    Next, we consider the defendant's allegation that he raised an arguable claim that his counsel was ineffective for failing to file a motion to suppress a suggestive lineup in which he was

the only Hispanic suspect with all of the other individuals being African American men. Again, as a general rule, to succeed on a claim of ineffective assistance of counsel for failure to file a motion to suppress, the defendant must establish that there is a reasonable probability "both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed." *Martinez,* 348 Ill. App. 3d at 537. However, because the defendant did not have a trial and was convicted pursuant to a negotiated guilty plea, we consider whether the defendant established that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial *Lee*, 137 S. Ct. at 1965.

¶ 23    The defendant maintains in his petition that his lineup was improperly suggestive because witnesses at the crime scene identified the shooter as a Hispanic male. He asserted that placing him in a lineup with only African American men would make him "an easy pick." In his supporting affidavit, the defendant maintains that counsel told him he was going to file a "motion to throw away [his] line up picture *** but he never did." The State argues that the defendant's claim is uncorroborated by sufficient proof. However, the defendant is not required to "prove" the alleged constitutional violation to avoid dismissal during first-stage postconviction proceedings. *People v. Tate*, 2012 IL 112214, ¶ 19. At the first stage, the defendant's allegations are taken as true unless affirmatively rebutted by the record. Because the record neither rebuts the allegations in his petition nor in his accompanying affidavit, we find that the defendant has established there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on proceeding to trial. *Lee*, 137 S. Ct. at 1965. Accordingly, we find the defendant's petition set forth an arguable claim of ineffective assistance of counsel and that the circuit court erred in dismissing the petition at the first stage.

¶ 24    We need not address defendant's additional claim of actual innocence because partial dismissals are not permitted at the summary dismissal stage. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001). Therefore, his entire petition is remanded to the circuit court to be docketed for second-stage proceedings. See *People v. Plummer*, 344 Ill. App. 3d 1016, 1024-25 (2003).

¶ 25    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the cause for further proceedings.

¶ 26    Reversed and remanded.