NOTICE

Decision filed 08/23/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180478-U

NO. 5-18-0478

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-1255 |
| | ) | |
| AARON SAMUEL, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's order striking the defendant's amended postconviction petition is affirmed because the defendant's amended petition was filed after the circuit court summarily dismissed the defendant's initial postconviction petition, and the defendant's amended petition cannot be considered as a motion to reconsider the court's summary dismissal. We modify the circuit court's order striking the amended petition, however, so that it is a denial of the defendant's request for leave to file an amended petition.

¶ 2    The defendant, Aaron Samuel, appeals from the circuit court's order striking his "Amended Post-Conviction Petition." For the reasons that follow, we affirm as modified.

1

¶ 3                                          BACKGROUND

¶ 4     On October 7, 2016, the defendant was charged by indictment with one count of home invasion in violation of section 19-6(a)(3) of the Criminal Code of 2012 (Code) (720 ILCS 5/19-6(a)(3) (West 2016)), one count of armed robbery in violation of section 18-2(a)(2) of the Code (720 ILCS 5/18-2(a)(2) (West 2016)), and one count of aggravated battery with a firearm in violation of section 12-3.05(e)(1) of the Code (720 ILCS 5/12-3.05(e)(1) (West 2016)). On July 7, 2017, the defendant pled guilty pursuant to a negotiated plea agreement with the State. Per the plea agreement, the defendant pled guilty to the charge of aggravated battery with a firearm, and the State recommended a sentence of 12 years in the Illinois Department of Corrections (IDOC) followed by 3 years of mandatory supervised release. The State also agreed to dismiss the charges of home invasion and armed robbery. Furthermore, the defendant agreed to answer questions from the State under oath. Defense counsel confirmed the terms of the negotiated plea agreement, and the defendant indicated that this was his understanding of the agreement.

¶ 5     Before accepting the defendant's plea, the circuit court examined the defendant regarding the rights the was waiving by entering a plea of guilty. During the circuit court's examination of the defendant, the defendant indicated that he was satisfied with defense counsel's representation. The defendant confirmed that he had not taken any drugs or medication which would have made it impossible for him to understand the plea proceedings. The defendant further confirmed that he had not been threatened, forced, or coerced into entering the plea agreement and that he was pleading guilty of his own free will.

¶ 6    The State then recited the factual basis for the defendant's plea. On July 26, 2016, law enforcement was dispatched to the victim's home. The victim was an 86-year-old man. The victim's son informed investigators that when he arrived at the victim's home, the side door to the residence was open, and the victim's car was missing from the car port. The victim's son found the victim inside the residence, lying on the floor in a large pool of blood. The victim was subsequently treated for a gunshot wound to the leg. The victim told investigators that on the previous night, four young, black males entered the victim's home through the back door, shot the victim, and took cash from him. The victim could not identify the suspects. The victim's son indicated that he believed credit cards were also missing from the victim's wallet. A 9-millimeter shell casing and one projectile were recovered from inside the residence. On July 27, 2016, the victim's car was found abandoned.

¶ 7    Subsequent investigation and canvassing of the neighborhood identified the defendant as a possible suspect. A neighbor told investigators that the defendant had announced his intention to rob the victim. On September 13, 2016, the defendant and one of his codefendants, Teondre Foughter, were arrested.

¶ 8    Foughter told investigators that he, the defendant, the defendant's brother, and Ceonta Jackson discussed robbing the victim. According to Foughter, the defendant mowed the victim's grass. The defendant believed that the victim had money because he used to be in the military. Foughter stated that he and his cohorts entered the victim's home from the side door. Inside the house, Jackson told the victim not to move. Immediately after, Jackson shot the victim. The defendant and Jackson went through the victim's pockets

3

before running outside to the victim's car. Foughter stated that the defendant drove the victim's car from the scene. Foughter admitted that he attempted to destroy fingerprint evidence with bleach wipes. Foughter told investigators that the defendant peeled stickers off the car to conceal its identity. In a separate interview, Jackson admitted to shooting the victim.

¶ 9    Investigators also interviewed the defendant. The defendant's interview was "Mirandized" and videotaped. During his interview, the defendant admitted that he mowed the victim's lawn nearly every week and knew of the plan to rob the victim. The defendant stated that he was with his younger brother, Foughter, and Jackson when the robbery was being discussed. The defendant claimed that he went to the victim's house to try to get his little brother, who was acting as a lookout, to come home. The defendant denied entering the victim's house. The defendant stated that he heard a gunshot and claimed that he did not expect Jackson to shoot the victim. The defendant told investigators "to just send him to the joint."

¶ 10    Defense counsel stipulated to the factual basis provided by the State. The circuit court asked the defendant, "[I]s that basically what happened, sir?" The defendant replied, "Yes, Your Honor." The circuit court accepted the defendant's plea of guilty and, consistent with the plea agreement, sentenced the defendant to 12 years in IDOC followed by 3 years of mandatory supervised release.

¶ 11    On October 5, 2017, the defendant filed a *pro se* postconviction petition and a motion for reduction of sentence. In these pleadings, the defendant contended that he received ineffective assistance of counsel. The defendant alleged that he was not given an

opportunity to see his discovery. The defendant further alleged that he was forced into a plea bargain and convinced to plead guilty to a crime that he did not commit.

¶ 12    On January 31, 2018, the circuit court held a hearing on the defendant's October 5, 2017, pleadings. The defendant indicated that he only wished to proceed on his motion for reduction of sentence and withdrew his *pro se* postconviction petition. The defendant told the circuit court that he had not seen his discovery until after he was sentenced. After reviewing the discovery, the defendant believed that he could have proceeded to trial and "had a whole different result." The circuit court asked the defendant if he wished to withdraw his guilty plea. The circuit court remarked that the defendant's arguments were related to withdrawing his plea rather than reducing his sentence. The defendant indicated that he did not wish to withdraw his plea of guilty. The circuit court subsequently denied the defendant's motion for reduction of sentence and advised the defendant that he may file an appeal of the court's ruling. The defendant did not take a direct appeal.

¶ 13    On July 20, 2018, the defendant filed another *pro se* postconviction petition.[1] In this petition, the defendant again claimed that he received ineffective assistance of counsel. Specifically, the defendant alleged: (1) that he was not given an opportunity to see his discovery; (2) that he was forced into a plea bargain; (3) that he was convicted of a crime that he did not commit without any evidence being presented against him; and (4) that defense counsel failed to investigate his alibi and discuss defense strategy. The defendant

_____

[1]For clarity, we will refer to the *pro se* postconviction petition filed on July 20, 2018, as the defendant's initial petition because the defendant withdrew his *pro se* postconviction petition filed on October 5, 2017.

5

attached an affidavit to his petition. In his affidavit, the defendant alleged that he did not witness Foughter or Jackson commit a crime. The defendant further alleged that Foughter and Jackson did not witness the defendant commit any crime. The defendant contended that the charges were false accusations.

¶ 14    On September 6, 2018, the circuit court entered an order summarily dismissing the defendant's postconviction petition.[2] In its order, the circuit court found that the defendant's allegations in the petition were the same allegations made in the defendant's motion for reduction of sentence. The circuit court further found that the defendant did not appeal the denial of his motion for reduction of sentence. Thus, the circuit court determined that the issues raised in the defendant's petition had already been decided and could not be raised again in postconviction proceedings. Finally, the circuit court also found that the defendant's petition was patently without merit. In reaching this conclusion, the circuit court relied upon the transcript of the defendant's guilty plea hearing. The circuit court noted that the defendant acknowledged his satisfaction with defense counsel's representation; stated that he had not been forced or coerced in any way to plead guilty; and acknowledged his participation in the offenses with which he was charged.

¶ 15    On September 10, 2018, the defendant filed an "Amended Petition for Post-Conviction Relief." In his amended petition, the defendant expanded upon the issues raised

---

[2]The record reveals that a "Notice to Petitioner of Adverse Judgment" with a certified mail receipt was filed on September 10, 2018, and mailed to the defendant. The notice of adverse judgment notified the defendant of the circuit court's September 6, 2018, order and advised him of his right to appeal said order. The returned receipt indicated that the notice of adverse judgment was received at IDOC on September 17, 2018.

in his initial petition and added additional claims that were not included in the initial petition. The defendant asserted that he had raised the gist of a constitutional claim.

¶ 16    On September 13, 2018, the circuit court ordered that the defendant's amended petition be "stricken." The circuit court found that the defendant filed his amended petition without leave of court. The circuit court further found that it had dismissed the defendant's initial petition before the defendant filed his amended petition. In its order, the circuit court indicated that if the defendant wished to file a successive postconviction petition, the defendant must comply with section 122-1(f) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2018)).

¶ 17    On October 5, 2018, the defendant filed a notice of appeal. The notice of appeal provided that the defendant was appealing the circuit court's September 13, 2018, order.

¶ 18                                                    ANALYSIS

¶ 19    On appeal, the defendant contends that the circuit court abused its discretion in striking the amended petition. The defendant argues that the circuit court should have characterized the amended petition as a postjudgment motion to amend his initial petition and to reconsider the order of summary dismissal. In the alternative, the defendant asks this court to remand this matter with directions for the circuit court to consider the defendant's amended petition as a successive petition.

¶ 20    The Post-Conviction Hearing Act (Act) sets forth a procedural mechanism through which a defendant can claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The Act provides

7

a three-stage process for the adjudication of postconviction petitions. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At the first stage, the circuit court must independently assess a defendant's postconviction petition, and if the court determines that the petition is frivolous or patently without merit, the court must summarily dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To survive the first stage, the postconviction petition need only present the gist of a constitutional claim. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

¶ 21    Section 122-5 of the Act provides that the circuit court "may in its discretion make such order as to amendment of the petition *** as shall be appropriate, just and reasonable and as is generally provided in civil cases." 725 ILCS 5/122-5 (West 2018). In civil cases, section 2-616(a) of the Code of Civil Procedure provides that "[a]t any time *before final judgment* amendments may be allowed on just and reasonable terms." (Emphasis added.) 735 ILCS 5/2-616(a) (West 2018). Accordingly, any amendment to a postconviction petition must be made prior to the entry of final judgment on the original petition. *People v. White*, 2013 IL App (2d) 120205, ¶ 9. A first-stage dismissal pursuant section 122-2.1(a)(2) of the Act constitutes a final judgment. *White*, 2013 IL App (2d) 120205, ¶ 9. Once a petition is dismissed at the first stage, the defendant may either file a motion to reconsider or challenge the dismissal on appeal. *White*, 2013 IL App (2d) 120205, ¶ 9.

¶ 22    Here, the defendant's amended petition was filed after the circuit court dismissed the initial petition as patently without merit. The order dismissing the initial petition was a final judgment. At that point, the defendant had no statutory right to amend his initial petition. *People v. Smith*, 2013 IL App (4th) 110220, ¶ 23. The defendant could have filed

a motion to reconsider or challenge the summary dismissal on appeal. The defendant did neither. The amended petition cannot be characterized as a motion to reconsider because the amended petition did not request that relief or challenge the circuit court's summary dismissal. Rather, the amended petition sought to add facts and new claims to the defendant's initial petition. Thus, the defendant's filing of his amended petition was an impermissible attempt to amend his pleading under section 122-5 of the Act, and the circuit court essentially treated it as such.

¶ 23     The proper resolution here is to modify the circuit court's September 13, 2018, order striking the defendant's amended petition such that it is a denial of leave to amend the initial petition. *White*, 2013 IL App (2d) 120205, ¶ 10. This modification properly disposes of the filing of the amended petition. *White*, 2013 IL App (2d) 120205, ¶ 10. Furthermore, this disposition is without prejudice to the defendant's right to seek leave to file a successive petition as provided in section 122-1(f) of the Act. *White*, 2013 IL App (2d) 120205, ¶ 10.

¶ 24     For the reasons stated, we affirm the circuit court's September 13, 2018, order as modified to be a denial of leave to amend the defendant's initial postconviction petition.

¶ 25     Affirmed as modified.