NOTICE
Decision filed 10/02/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210094-U

NO. 5-21-0094

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 03-CF-1363 |
| | ) | |
| JAMES MILLER, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in denying the defendant's postconviction petition where it appeared that the court was operating as if the postconviction petition had advanced to a third-stage evidentiary hearing, but the defendant was not given a proper evidentiary hearing. Therefore, we reverse the court's order and remand for a proper third-stage evidentiary hearing.

¶ 2   On March 18, 2021, the circuit court of Madison County denied the defendant, James Miller's, postconviction petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), finding that the defendant had failed to make a substantial showing that his constitutional rights were violated. The defendant appeals, arguing that the court's order should be reversed and this case remanded for a third-stage

1

evidentiary hearing where the trial court failed to conduct a timely, proper third-stage evidentiary hearing and where he was not provided with reasonable assistance of postconviction counsel. For the reasons that follow, we reverse and remand for a third-stage evidentiary hearing.

¶ 3                                I. BACKGROUND

¶ 4    The facts necessary to our disposition of this appeal follow. At a July 2007 jury trial, the defendant was convicted of two counts of murder and one count of armed robbery. The convictions stemmed from an incident in a parking lot adjacent to the Time Out Lounge in Alton, Illinois, where two people were shot and killed. Subsequently, the defendant was sentenced to natural life in prison. In his direct appeal from his convictions, he argued that his trial counsel was ineffective because counsel failed to present the testimony of several critical witnesses, did not move for a continuance to secure the witnesses, and failed to impeach two State witnesses with their prior inconsistent statements. This court affirmed his convictions. *People v. Miller*, 2011 IL App (5th) 090156-U.

¶ 5    On June 19, 2012, the defendant filed a *pro se* petition for postconviction relief, alleging actual innocence based on newly discovered eyewitness testimony. Also, the *pro se* petition alleged that the defendant was denied his right to effective assistance of appellate counsel for counsel's failure to raise and properly litigate his claims that his trial counsel was ineffective for failing to present the testimony of several critical witnesses. Attached to the petition was an affidavit from Michael Green, in which Green indicated that he witnessed the shooting and observed that the shooter was a "tall, darked

2

[*sic*] skin guy with braids"; a description that did not match the defendant. Green indicated that he never gave a statement to the police and was never questioned about the incident. However, while incarcerated in Menard Correctional Center, he overheard the defendant talking to the law clerk about the shootings and realized that the defendant had been convicted of the murders. Green then approached the defendant and told the defendant that he witnessed the shootings, and the defendant was not the man that he saw that night. In his affidavit, he indicated that the defendant was not the shooter, and he was never called to testify on the defendant's behalf because the affidavit was the first time that he came forward with the information.

¶ 6 On July 6, 2012, the trial court appointed postconviction counsel to represent the defendant in the postconviction proceedings. After delays with the defendant's appointed counsel having conflicts of interest, new counsel was appointed to represent him on June 11, 2013.

¶ 7 On August 20, 2013, the State filed a motion to dismiss the defendant's postconviction petition, arguing that the defendant's actual innocence claim made no allegation as to a violation of his constitutional rights, the evidence at trial overwhelmingly supported his conviction, the alleged newly discovered evidence was known at the time of his direct appeal, his ineffective assistance of appellate counsel claims should be dismissed based on *res judicata*, and the ineffective assistance claims were frivolous and patently without merit. Thus, the State contended that the defendant did not suffer a substantial denial of his constitutional rights.

¶ 8    In response, on September 3, 2013, the defendant's appointed counsel filed an answer to the motion to dismiss, arguing that the newly discovered evidence was not known to the defendant at the time of his direct appeal.  The answer also noted that one of the known witnesses at the time of trial could not be located at that time but was subsequently found, and another witness was not called to testify at trial.  On December 16, 2013, counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).  On February 6, 2014, the trial court denied the State's motion to dismiss, allowing the postconviction petition to proceed to a third-stage evidentiary hearing.  In the order, the court explained that it was using an abundance of caution and granting every benefit of consideration to the defendant's allegations.  Although the case was set for a hearing, it was subsequently continued so that the defendant's attorney could subpoena witnesses for the evidentiary hearing.

¶ 9    On August 6, 2014, the case was reassigned to a new judge as the current judge had resigned.  On October 21, 2014, the trial court granted the State leave to file an amended motion to dismiss within 28 days.  On November 7, 2014, the defendant filed a *pro se* objection to the State being allowed to amend its motion to dismiss eight months after the initial motion to dismiss was denied.  On February 19, 2015, the court granted the defendant's attorney's request for leave to withdraw due to an unexpected death in her immediate family and appointed new counsel to represent the defendant in the postconviction proceedings.  On April 1, 2015, the defendant filed a *pro se* motion for default judgment because it had been more than 28 days since the court granted the State leave to file an amended motion to dismiss, and the State had neither requested additional

4

time to file its amended motion nor filed an amended motion. The defendant also filed a *pro se* motion to substitute judge, which he later withdrew.

¶ 10    After the defendant had a few attorneys withdraw due to conflicts of interests, new counsel was appointed to represent him on March 24, 2016. On September 26, 2016, the defendant's new counsel filed a Rule 651(c) certificate, which indicated that, after consulting with the defendant, the attorney would not be making any deletions from the defendant's previously filed *pro se* motions but would be filing additional motions. Thereafter, on October 17, 2016, counsel filed a motion to dismiss the State's request to file an amended motion to dismiss and a motion to proceed with the third-stage evidentiary hearing on the defendant's postconviction petition. In the motion, the defendant alleged that he had suffered prejudice as a result of the State's failure to file a timely amended motion to dismiss as his counsel had been unable to take the necessary procedural steps to locate and interview his witnesses.

¶ 11    On January 26, 2017, more than two years after the trial court's deadline, the State filed its amended motion to dismiss the defendant's postconviction petition. In the amended motion, the State argued, as in the original motion, that the defendant's claims of ineffective assistance of trial and appellate counsel were barred by *res judicata*. The State also contended that trial counsel's decision not to call certain witnesses at trial was a matter of trial strategy and would not support an ineffective assistance of counsel claim. The State further argued that the defendant's claim of actual innocence based on newly discovered eyewitness testimony was unsubstantiated, lacked credibility, was positively rebutted by the evidence presented at the defendant's trial, and would not change the

5

result on retrial. As for the defendant's request that the State's amended motion to dismiss be dismissed as untimely, the State argued that nearly all of the delays in this matter were the result of the defendant's constant hiring and firing of new attorneys and judge shopping.

¶ 12 At the July 18, 2017, hearing on the State's amended motion to dismiss, the defendant argued that the State's amended motion to dismiss was untimely; that the State incorrectly argued that he was responsible for the delay as the record was clear that the assigned judges had to recuse themselves because they had previously participated in the defendant's prosecution, and his various appointed attorneys had to withdraw due to conflicts of interests; and that he suffered prejudice from the delay as he was losing the ability to locate witnesses. In response, the State argued that the defendant had amended his postconviction petition up until October 2016[1] and that the State's response was not "quite as untimely" as it was portrayed. The court then took the matter under advisement.

¶ 13 On October 19, 2017, the trial court entered an order, in which it stated that it wanted additional argument and information concerning Green and his affidavit. On August 30, 2018, the court held a hearing, but the defendant's counsel expressed confusion about the court's October 19 order. Counsel indicated that, if the court's ruling was to advance the postconviction petition to a third-stage evidentiary hearing, the defendant had previously requested that an investigator be appointed to serve subpoenas

---

[1]From a review of the record, it does not appear that the defendant ever amended his postconviction petition.

6

on his various witnesses. In response, the State indicated the proceedings were at the second stage, and the hearing was for the defendant to present additional testimony regarding Green. When the court questioned the defendant's counsel as to whether he had a list of witnesses, counsel replied that he did not have a formal list prepared because he was waiting until the petition advanced to a third-stage evidentiary hearing. He indicated that he mailed a letter to Green on July 8, 2018, about testifying, but Green never responded. However, he spoke to Green before the hearing, and Green advised that he was represented by appellate counsel. The court then responded, "Well, let's get it from *** Green's mouth," and instructed that Green be brought in.

¶ 14    During questioning, Green indicated that his case was currently on appeal, and he was not willing to testify in the defendant's case without first discussing it with his appellate counsel. In response, the defendant's counsel requested a continuance to allow Green time to consult with his attorney. Counsel then indicated that the defendant wanted clarity on whether his postconviction petition was advancing to the third stage, so that they could request the appointment of a special investigator to subpoena his witnesses. The State argued that the defendant's actual innocence claim was based on Green's eyewitness testimony that the defendant was not the shooter, Green made no such affirmations on the stand, and there was no evidence that Green would substantiate the defendant's postconviction claims. The State also argued that, based on Green's previous first degree murder conviction and his failure to come forward with this information earlier, Green's credibility was questionable. Thus, the State requested that

7

the amended motion to dismiss be granted. The court again took the matter under advisement.

¶ 15 Approximately one year later, on August 7, 2019, the defendant filed a *pro se* motion to remove his counsel, contending that counsel had not worked on his case, he had no contact with counsel since the last hearing, and counsel had not obtained subpoenas for any of the witnesses that he wanted to testify at his evidentiary hearing. On November 25, 2019, the defendant filed a *pro se* request for a prompt hearing.

¶ 16 On June 26, 2020, the trial court held a hearing, at which the defendant indicated that he wanted counsel removed from his case because he had not spoken with counsel since August 30, 2018, and counsel had not worked on his case. The defendant indicated that he and his parents had written to counsel, but counsel replied that he was not going to do anything on the case until "this motion was resolved." The defendant further indicated that counsel had said that he wanted to call witnesses for an evidentiary hearing, but he had not done anything. Counsel responded by acknowledging that he had not had any contact with the defendant since August 2018. However, he explained that, in the intervening period, the defendant filed the motion to remove him as counsel, and his standard practice was to cease working on the case once such a motion was filed. Counsel indicated that Green had said that he would be in contact if he wanted to testify, but counsel had not heard from him. After hearing the arguments, the court determined that there was no cause to remove counsel, explaining that there were limited resources to pay for special defenders.

8

¶ 17    The trial court then proceeded with the hearing, indicating that Green had been subpoenaed as a witness, and that, although it did not anticipate conducting a hearing with Green, it wanted to inquire on "his stance on being a witness." Before any questioning, Green indicated that he did not know anything about any testimony and why he was there. When the court questioned whether he was willing to testify for the defendant, Green responded that he needed to discuss it with his attorney, and he did not know what was going on. He then reiterated that he was not willing to testify until he talked to his attorney. The State then renewed its motion to dismiss, arguing that Green's testimony was a "strong part" of the defendant's argument for a third-stage evidentiary hearing; there had not been a showing that would justify advancing the postconviction petition to the third stage; and the court had gone above and beyond to arrange for Green to testify, but Green had provided no evidence that would support the postconviction petition.

¶ 18    In response, the defendant's counsel argued that Green was not the only witness that the defendant wanted to call at the evidentiary hearing; that there was sufficient evidence and witnesses to present at an evidentiary hearing; and that, based on the trial court's previous denial of the State's motion to dismiss, the petition should be at the third stage of the postconviction proceedings. After hearing the arguments, the court denied the State's oral motion to dismiss but noted that the State could file a written motion to renew it. The court then reiterated that, at this time, the State's motion to dismiss was denied.

9

¶ 19 After the trial court announced its ruling, the defendant expressed confusion as to what stage they were at in the postconviction proceedings. The court then explained that the State made an oral motion to dismiss the case, and the court denied it at this time. However, the court noted that the State could file a written motion to dismiss. The court explained that the main reason why the motion was denied was because it was an oral motion, and the court wanted it in writing. The defendant then asked whether this hearing was his evidentiary hearing. The court responded, "Well, I mean in some ways, you can say that, because this is the second time for Mr. Green to get to have an opportunity—or for us to find out if he wanted to testify or not, and twice we have heard him say no."

¶ 20 On July 13, 2020, the defendant's counsel filed a witness list for the third-stage evidentiary hearing and requested a special investigator to locate and subpoena witnesses. On December 14, 2020, the State filed a second amended motion to dismiss the defendant's postconviction petition, which reiterated the arguments made in the previous motions to dismiss. Additionally, the State argued that the defendant's postconviction petition was premised on the argument that Green possessed material information regarding his actual innocence and that, after asking Green about the matter, it was clear that the defendant's assertions were meritless.

¶ 21 On March 18, 2021, the trial court entered an order denying the defendant's postconviction petition. In the order, the court indicated that, at the July 18, 2017, hearing, on the State's motion to dismiss, the court granted the defendant an opportunity for a third-stage evidentiary hearing so that "Green could testify," despite the weight of

10

the evidence against the defendant and the unusual circumstances surrounding Green's affidavit. The court noted that Green was given two opportunities to testify on the defendant's behalf, but he refused to testify both times. Thus, the court found that the broad allegations in the defendant's postconviction petition were not supported or were contradicted by the affidavits, exhibits, and record. The court also found that the defendant's ineffective assistance of trial counsel claims had been examined and rejected by the trial and appellate courts, and his claim of new evidence could not defeat the overwhelming evidence against him. Accordingly, the court concluded that the defendant had failed to make a substantial showing of a constitutional violation and denied his postconviction petition.

¶ 22    On April 5, 2021, the defendant filed a *pro se* motion to reconsider the trial court's ruling. Thereafter, on April 7, 2021, the court denied the motion to reconsider. The defendant appeals.

¶ 23                                   II. ANALYSIS

¶ 24    On appeal, the defendant argues that this court should reverse the trial court's denial of his postconviction petition and remand for a proper third-stage evidentiary hearing because it was unclear at what stage of the postconviction proceedings the court denied his petition. Specifically, the defendant contends that because (1) the State's initial motion to dismiss was denied, (2) the State never filed an answer, (3) the State's subsequent amended motion to dismiss was untimely filed, and (4) the court sought information beyond what second-stage proceedings allow for when it had Green testify, the record was not clear whether they were at the second or third stage of the

postconviction proceedings. The defendant argues that the underlying proceedings were a mix of second- and third-stage proceedings, and neither stage was properly conducted. Thus, he contends that this confusion prevented him from having an evidentiary hearing where he had a fair opportunity to present evidence on his postconviction petition.

¶ 25    The Act provides a three-stage procedure for a petitioner alleging substantial deprivations of his constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage, the trial court, without input from the State or further pleadings from petitioner, determines if the petition is frivolous or patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). If the petition is not dismissed at this stage, then it advances to the second stage where counsel may be appointed to indigent petitioners (725 ILCS 5/122-4 (West 2020)) and where the State is permitted to file a motion to dismiss or an answer to the petition (*id*. § 122-5). *People v. Thomas*, 2013 IL App (2d) 120646, ¶ 5. If the State's motion to dismiss is filed and denied, the State must file an answer within 20 days after the denial. 725 ILCS 5/122-5 (West 2020). The parties may not file other pleadings unless the court permits additional pleadings on its own motion or on the motion of either party. *Id.* Also, the court may, in its discretion, "make such order as to amendment of the petition or any other pleading, or as to pleading over, or filing further pleadings, or extending the time of filing any pleading other than the original petition, as shall be appropriate, just and reasonable and as is generally provided in civil cases." *Id*.

¶ 26    At the second stage, the trial court must determine whether the petition and any accompanying documentation makes a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If petitioner satisfies his burden of

12

making a substantial showing of a constitutional violation, then the petition advances to a third-stage evidentiary hearing. *Id.* However, if no such showing is made, then the petition is dismissed. *Id.*

¶ 27 When the State moves to dismiss the postconviction petition, the trial court only rules on the legal sufficiency of petitioner's allegations. *People v. Domagala*, 2013 IL 113688, ¶ 35. At this stage, the trial court must take all well-pleaded facts that are not positively rebutted by the record as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The question is whether the allegations raised in the postconviction petition, which are liberally construed in favor of petitioner and taken as true, are sufficient to invoke relief under the Act. *People v. Sanders*, 2016 IL 118123, ¶ 31. Since this stage involves purely a legal determination, the trial court is precluded from engaging in any fact-finding or credibility determinations. *Id.* ¶ 42; *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). The Act contemplates that these determinations will be made at the evidentiary stage, not the dismissal stage, of the postconviction proceedings. *People v. Dupree*, 2018 IL 122307, ¶ 29. Thus, at a third-stage evidentiary hearing, the court acts as fact finder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary conflicts. *People v. Young*, 2022 IL App (1st) 210534, ¶ 40.

¶ 28 Here, the State's initial motion to dismiss was denied on February 6, 2014. At this point, the case should have proceeded to a third-stage evidentiary hearing under the procedure set forth in the Act. Instead, the judge on the case resigned, the case was thereafter reassigned to a new judge, and the State sought leave to file an amended

13

motion to dismiss. The trial court granted the State's request and gave the State 28 days to file an amended motion. The defendant contends, on appeal, that, although the Act permits amendments where it is just and reasonable, it does not permit a party to continue filing amended motions to dismiss until they are ultimately successful. In making this argument, the defendant notes that the court should consider four factors when deciding whether to allow an amendment of a pleading: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). The defendant here argues that the State did not have a legitimate reason to amend its denied motion to dismiss; instead, the State's only reason for filing an amended motion was "to get a second-bite at the apple" with a new judge.

¶ 29 Although, during the postconviction proceedings, the State indicated that the defendant had amended his postconviction petition, this contention is not supported by the record. There is no indication that the defendant ever amended his postconviction petition after the State's initial motion to dismiss was denied. As the defendant did not amend his postconviction petition to include new allegations and the amended motion to dismiss made similar arguments to those in the already denied motion, it does not seem just and reasonable for the State here to be given an opportunity to amend its motion once there was a change in judge.

14

¶ 30 Then, once the trial court granted the State permission to file an amended motion, the State did not file that amended motion until January 26, 2017, more than two years after the court's order allowing the amendment. Although the State, in the postconviction proceedings, sought to blame the defendant for its delay in filing the amended motion, most of the delays in the proceedings were out of the defendant's control.

¶ 31 Moreover, after the State finally filed its amended motion to dismiss, it appeared that the trial court operated as if the postconviction petition had proceeded to the third stage of the postconviction proceedings, even though its ultimate ruling was based on the second stage. After the hearing on the amended motion to dismiss, the trial court entered an order, stating that it wanted additional argument and information concerning Green and his affidavit before it ruled on the motion. However, Green refused to testify on the defendant's behalf at the two subsequent hearings and, thus, did not substantiate the statements that he made in his affidavit, or the allegations made in the defendant's postconviction petition.

¶ 32 During these hearings, there was understandably some confusion as to what stage of the postconviction proceedings they were in. This was exacerbated by the trial court's references to Green testifying; the court responding that "We're here for the hearing" when asked by counsel for clarification; and the court responding to the defendant's question about whether the second hearing was his evidentiary hearing as follows: "in some ways, you can say that, because this is the second time for Mr. Green to get to have an opportunity—or for us to find out if he wanted to testify or not." Also, in its order

15

denying the postconviction petition, the court indicated that it had granted the defendant an opportunity for a third-stage evidentiary hearing so that Green could testify.

¶ 33    As explained above, at the second stage of the postconviction proceedings, the postconviction petition is supposed to be liberally construed in defendant's favor and taken as true.  As this stage only involves a legal determination, the trial court is precluded from engaging in fact-finding or credibility determinations.  Instead, those determinations should be made at a third-stage evidentiary hearing.  Thus, the court here should not consider any potential issues with Green's testimony when ruling on the State's amended motion to dismiss at the second stage of the postconviction proceedings.  The defendant's postconviction petition, along with Green's affidavit, should be taken as true as long as they are not positively rebutted by the record.  However, Green was twice brought before the court and questioned about his willingness to testify in support of the defendant's postconviction petition.  Thus, any in-court questioning of Green about the statements that he made in his affidavit would be outside the scope of second-stage proceedings.

¶ 34    The State argues that the record is clear that the proceedings were at the second stage, and the trial court merely wanted to ascertain whether Green would testify if the matter proceeded to a third-stage evidentiary hearing.  The State also contends that there were no procedural issues with what occurred in this case because Green's testimony did not involve resolving any factual disputes raised by the postconviction petition.  However, this is contradicted by the State's arguments in support of dismissal.  Specifically, the State argued that Green made no statement that the defendant was

16

involved in the shooting while on the stand, and, thus, the defendant's postconviction claims were meritless and could not be substantiated. The State also argued that the court went above and beyond to arrange for Green to testify, but Green had provided no evidence that would support the defendant's petition. The State further argued that Green was not a credible witness; however, this type of determination is only permitted at the third stage (we note that the State did indicate that this argument may be premature). See *Sanders*, 2016 IL 118123, ¶ 42 (credibility determinations may be made only at a third-stage evidentiary hearing).

¶ 35    Based on the above, we find that the trial court here proceeded as if the postconviction proceedings had advanced to the third stage, but the defendant was not given an opportunity to present additional witness testimony or evidence in support of his claims. Thus, we remand the matter for a proper third-stage evidentiary hearing where the defendant is appointed new counsel and is given the opportunity to present evidence in support of his claims.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we reverse the denial of the defendant's amended postconviction petition and remand the cause to the trial court for a third-stage evidentiary hearing on the defendant's petition.


¶ 38    Reversed and remanded.